UNITED STATES, Appellee

v

HERMAN LINDSEY, Acting Staff Sergeant,
U. S. Marine Corps, Appellant

11 USCMA 38, 28 CMR 262

No. 13,429

Decided November 20, 1959

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

UNITED STATES, Appellee

v

DONALD P. HUMBLE, Private E-2, U. S. Army, Appellant

11 USCMA 38, 28 CMR 262

No. 12,932

Decided December 4, 1959

First Lieutenant *Richard P. Nee* argued the cause for Appellant, Accused. With him on the brief were *Major Edward Fenig* and *Captain James A. Hagan.*

First Lieutenant *Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *First Lieutenant William H. Keniry.*

ROBERT E. QUINN, Chief Judge:

The accused was tried and convicted of larceny. The question before us is whether he was prejudiced by improper conduct of trial counsel.

Appellant was charged with acting in conjunction with Private Ronald E. Goodwin. At trial, the prosecution called two witnesses who were implicated with the accused in the transaction. One was Goodwin. He testified that he helped the accused collect clothing of recruits belonging to the accused's company, and that together with the accused he extracted money from the clothing and shared in the proceeds. The other witness was, ironically, Private Law. Law's room was used as a collection point for the clothes and the division of the money. He also shared in the proceeds of the alleged larceny.

The second question put to Law by trial counsel inquired where he was "presently located." He replied that he was in the "Post Stockade." After he gave an account of the incident and the extent of his participation in it, he was asked by trial counsel whether he had been "tried for . . . [his] part in this offense."[1] He responded in the affirmative and indicated he was tried for "willfully receiving stolen money." Similarly, Goodwin was asked, immediately after he testified regarding the division of the money, whether he had been tried and convicted for his part in the affair. He, too, replied in the affirmative.

Defense counsel did not object to the questions asked Law, but he did object to those put to Goodwin. His objection was overruled.

In its brief, the Government assumes "arguendo" that trial counsel acted improperly, but it excuses the error on the ground that the misconduct did not prejudice the accused. That there is error is manifest.

Evidence that one of several accused entered a plea of guilty or was convicted on a separate trial ▌ is not admissible on the issue of guilt of another accused. Payton v United States, 222 F 2d 794 (CA DC Cir) (1955); United States v Babb, 218 F 2d 538 (CA 5th Cir) (1955); State v Kerley, 246 NC 157, 97 SE 2d 876. The rule applies not only when the accused are charged with the same offense, but extends to a situation in which the offenses charged arose out of the same circumstances. Thus, in Kirby v United States, 174 US 47, 19 S Ct 574, 43 L ed 890, the Supreme Court held it was error in a prosecution for receiving stolen property to admit evidence that the person who gave the property to the accused had been convicted of stealing the property. See also State v Justesen, 35 Utah 105, 99 Pac 456. The Manual for Courts-Martial refers to the rule in its general discussion on the admissibility of statements of conspirators and accomplices. In part it says:

". . . it is to be remembered that evidence of the conviction of an accomplice of the accused of the offense charged against the accused cannot be received against the accused as tending to prove that the offense charged was committed or that the accused participated in it." [Paragraph 140b, page 253.]

The presence of error of the kind in issue does not itself justify reversal of the findings of guilty. In ▌ must also appear there is ▌ a fair risk the error prejudiced the accused. Klose v United States, 49 F 2d 177 (CA 8th Cir); State v Williams, 166 SC 63, 164 SE 415. One learned writer has observed that "it is only when, in the light of all the circumstances attendant upon a trial, the misconduct complained of can be said to have influenced the jury's verdict and prevented a fair trial, that prejudice results." V. Woerner, Annotation, 48 ALR 2d 1016, 1018. Since

---

[1] The record shows that the witness did not salute upon entering the courtroom. This action taken with his testimony leaves no doubt that he was not only tried but convicted for participating in the incident.

the error is measured in terms of prejudice at the trial, it is usually not open to the accused on appeal if he failed to object or to request an instruction to disregard the evidence. Annotation, supra, at 1019. The rule of waiver, however, is not inflexible.

If it appears that the prosecuting attorney's action was a deliberate effort to prejudice the accused, ■ his misconduct may be challenged on appeal, even in the absence of an appropriate objection at the trial level. Leech v People, 112 Colo 120, 146 P 2d 346; People v Ford, 89 Cal App 2d 467, 200 P 2d 867; see also United States v Johnson, 3 USCMA 447, 13 CMR 3. Actually, the qualification is merely a specific application of the general rule that an appellate court will notice a trial error, even in the absence of objection, in order to prevent a manifest miscarriage of justice. We can, however, pass over further discussion of this part of the overall problem. While there was no objection to Law's testimony, there was one to Goodwin's. Consequently, as far as the need for objection is concerned, the question is adequately preserved for review.

The Government advances several other bases of waiver, from abandonment to cure of the error by other evidence. Only one of these need engage our attention, and that is that the evidence of guilt is so compelling the inadmissible evidence did not harm the accused.

Some courts have held that where the witness testifies to all the circumstances of the act, disclosure of the fact that he pleaded guilty to, or was convicted of, the same offense cannot harm the accused because the jury already knows what the witness has done. State v Williams, supra. Others apparently take a different view. People v Louise, 242 App Div 471, 275 NYS 263; Evans v State, 39 Ala App 498, 105 So 2d 831. We prefer to approach the Government's argument primarily from the standpoint of evidence other than that given by Law and Goodwin. Since the accused testified in his own behalf, we can appropriately use his testimony to measure the effect of the error.

The accused reviewed for the court-martial all the details of his activities from evening until the ■ early morning hours when he and Goodwin collected garments belonging to sleeping recruits in platoons 4 and 5. He admitted that, without authority or right, he took money from these garments and gave part to Goodwin and Law. He said he had been drinking, but he admitted he "knew what purpose . . . [he] had in mind for taking" the clothing. He said he was "going to teach these people a lesson about leaving their money around where people could get it." He claimed he intended "to hide the money . . . and when . . . the recruits had . . . suffered enough and missed the money . . . [he] was going to return" it to them. He further maintained he told Law and Goodwin he was going to teach the recruits a lesson. He acknowledged, however, that he did not discuss with them his intention to return the money after the recruits had "suffered." He also testified he had no authority to be in platoon 5 area. It was for that reason he woke Goodwin, who was a member of the 5th platoon, and asked him "if he wanted to help . . . get some money." To account for his failure to return the money voluntarily, he said the next morning he learned "they had called the CID." He realized the seriousness of what he'd done and got "scared." As a result, he determined not to get implicated any further than he already was and to remain quiet. He confessed he did not know whose wallets or money he had taken, but he insisted he kept an account of the proceeds which he divided into two parts. One part represented the money taken from the recruits in the 5th platoon, and the other consisted of the money taken from the recruits in the 4th platoon. He gave the 5th platoon money to Law and Goodwin because they were in that platoon. He retained the money belonging to the recruits in the 4th platoon because he was "the only one" from that unit participating in the incident.

It is unmistakably clear that the accused's guilt or innocence depended upon the evidence as to his intention.

41

Defense counsel stressed this fact time and again in his closing argument. He noted that the accused was "the only individual in the entire world who can say what went on inside Humble's head that night." He pointed out that the accused had denied he intended anything more than to conceal the money for a time in order to teach the recruits a lesson. He referred to the intentions of Goodwin and Law and admonished the court-martial it could look "only" at the intent of the accused. He also reviewed the division of the money. He emphasized that "those who were present" had "no idea" of the purpose of the division except the accused; and that he had testified to the "absolute unvarnished truth" when he said he had turned the 5th platoon money over to the men from that platoon, while "assuming responsibility" for the money which belonged to the men in his platoon.

The record of trial shows that the court determined to test the truthfulness of the accused's testimony and the correctness of the defense argument by a simple calculation. Before retiring to deliberate on the issues, it requested information as to the "platoon to which each of the men listed in the Charge belonged." A stipulation to this effect was entered into the record. The stipulation and the charge, as substantiated by the evidence, show that the amount of money taken from members of the 5th platoon totaled $56.00, whereas that taken from the 4th platoon members amounted to $251.00. Law testified he received $65.00; Goodwin said he got $84.00. Neither was contradicted by the accused. Consequently, the court members could conclude that Law and Goodwin had testified truthfully as to the amount each received. Caminetti v United States, 242 US 470, 494, 61 L ed 442, 37 S Ct 192. The figures provided by them demolished the accused's claim regarding the division of the money and branded as untrue his testimony that he entertained an innocent intention when he took the clothing of sleeping recruits; searched and removed all money therefrom; and secreted his share of the admittedly unauthorized appropriation. We conclude, therefore, that the error in the admission of evidence of the conviction of Law and Goodwin played no part in the court-martial verdict and was not prejudicial to the accused.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

I concur with the Chief Judge but prefer to make some observations on two specific errors asserted by the defense.

Appellate defense contend vigorously that the court member, in his cross-examination of the witness Goodwin, disclosed a purpose to use Goodwin's judicial confession of guilt as evidence against the accused. I doubt that such a conclusion necessarily follows. The examination was conducted immediately following Goodwin's testimony to the following effect: That accused was drunk; that he had awakened Goodwin from his sleep; and that when the accused asked Goodwin if he would help the accused get some money, Goodwin did not have any idea "whether he was playing a trick or not." The questions which immediately followed seem to me to have been asked to bring out that Goodwin did not understand the taking to be done in jest.

In presenting my views on the next issue, I will assume arguendo that the questions were asked for the purpose asserted by the defense. That assumption poses the question of prejudice to this accused. Obviously, every defendant has a right to have his guilt or innocence determined by the evidence presented against him and not by what has happened with regard to a criminal prosecution against someone else. With that principle in mind, I look to the record for evidence of guilt. The Chief Judge relates most of the testimony given by the accused himself, and from that evidence it is beyond question that he judicially admitted the crime of wrongful appropriation, a lesser offense of larceny. The impact of the questioned evidence, then, must be considered for possible effect on the ac-

cused's intent permanently to deprive the victims of their money, and I am certain the finding as to that element was uninfluenced by the fact that Goodwin had pleaded guilty. Trial defense counsel argued that his client was "the only individual in the entire world who can say what went on inside Humble's head that night." True it is that the accused stated he intended to return the money, but his acts, as testified to by him, were outside manifestations which render his uncorroborated statement the height of absurdity. He was not an inexperienced squad leader, for he had had some three years prior service in the Marine Corps. He had been drinking, but he begged the question as to whether he was intoxicated and he recounted in precise detail his activities of the evening and admitted that at the time he rifled the clothing he was able to determine the purposes for which he took the money. He conceded he formed an intent temporarily to deprive the recruits of their possessions and if he had the mental capacity to form that intent I cannot ascertain a sound basis for concluding he could not intend to deprive them permanently of their money. Furthermore, his story that he intended to teach the recruits a lesson and then return their property to them is utterly fantastic in the light of his testimony that only one wallet was in the open, he surreptitiously removed the clothing to a place where detection would be improbable, it was dark and he did not know from whom he obtained the money, he extracted the bills from the wallets, divided the loot with his accomplices, co-mingled the amount he retained with his own, kept no record of the amount which he obtained, hid his portion of the ill-gotten gains in a venetian blind, took money from the clothes of recruits over whom he exercised no control, and, when subsequently interrogated, he stated under oath that he had neither taken any money nor concealed it in the blind.

The facts and circumstances the Chief Judge relates, together with those I mention, prove to my satisfaction that the guilt of accused was so overwhelmingly established by his own admissions from the witness stand that no court member would pay heed to other testimony which bore only remotely on his guilt. I, therefore, join in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

Unlike my brothers, I deem the circumstances of this record sufficiently unusual to find that the accused's substantial rights were materially prejudiced.

Tried by general court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. Intermediate appellate authorities affirmed, and we granted review on the issue whether the law officer erred prejudicially in permitting a prosecution witness, who was also an alleged co-principal, to testify on direct examination, and over objection, that he had already been convicted of larceny for his part in the offense.

The accused was a squad leader in a recruit training company. On the evening of the alleged incident, he, accompanied by Privates Law and Goodwin, gathered up the clothing of a number of recruits and removed wallets from the pockets. The wallets and their contents were apparently divided among the three men. On the following morning, the owners of the property reported their losses, and an investigation ensued. It disclosed the foregoing information as well as the location of the missing wallets and their contents. At the trial, the accused testified he was intoxicated and admitted he had played a leading role in gathering the clothing and wallets. He insisted, however, he had previously warned recruits in the barracks concerning the danger involved in not safeguarding their wallets and had drunkenly gathered up the items solely to emphasize to the victims the necessity of better securing their money. The division of the property was due to the fact that it belonged to men on different squads. The division was made on the basis of his retention of the wallets belonging to his squad members and

**43**

the receipt by Goodwin and Law of the wallets belonging to their squads. He denied any intent on his part to steal the property involved and stated that his failure on the following morning to make a report of the matter was due to the fact that the investigation of the losses had commenced and his consequent fear he would be accused of larceny.

During the presentation of its case, the prosecution adduced the testimony of accused's alleged co-actors, Law and Goodwin. Both were permitted to testify on direct examination that they had pleaded guilty to larceny of the wallets and their contents and had been found guilty in accordance with their pleas. The defense objected only to the trial counsel's interrogation of Goodwin concerning his plea and conviction, and it is solely with the law officer's adverse ruling on that objection that our grant of review is concerned.

My brothers concede it was error for the prosecution to introduce evidence that one of accused's alleged accomplices had been convicted of the same crime. With that conclusion I agree. Manual for Courts-Martial, United States, 1951, paragraph 140*b*; Leroy v Government of Canal Zone, 81 F 2d 914 (CA 5th Cir) (1936); United States v Toner, 173 F 2d 140 (CA 3d Cir) (1949); Babb v United States, 218 F 2d 538 (CA 5th Cir) (1955); and cases collected in Annotation, 48 ALR 2d 1016, at pages 1025–1027. However, their belief that no prejudice ensued ignores both the rationale of the rule excluding such evidence and the use to which the accomplices' plea and conviction were put by at least one member of the court-martial.

In United States v Toner, supra, the Circuit Court of Appeals pointed out that evidence of an accomplice's guilty plea and conviction is *logically* relevant to prove his co-principal's guilt. However, it stated the reasoning for the rule excluding such evidence to be as follows:

"The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him,

not against somebody else. . . . The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." [173 F 2d 140, at page 142.]

An examination of the record in this case discloses the following colloquy between a member of the court and the witness Goodwin following the latter's disclosure of his plea and conviction:

"Q. I believe that you testified that you pleaded guilty to grand larceny, and that you were so tried. Now did you plead guilty because you felt that you were guilty of grand larceny?

"A. Yes, sir, I did.

"Q. *There's no question in your mind you were guilty of grand larceny?*

"A. *Yes, sir, I was.*

"Q. *And that's why you pled guilty?*

"A. Yes, sir.

"Q. *And that is in connection with this incident in which you were associated with the defendant?*

"A. I don't understand your question, sir.

"Q. Well, it—you pleaded guilty to grand larceny on—*because of your actions of that particular night in which you were involved with the defendant?*

"A. *My actions, yes, sir.*

"Q. *You didn't plead guilty for something you did three days before that or after that?*

"A. No, sir.

"Q. *It was because of what you did that night?*

"A. Yes, sir.

"Q. *When you were the defendant?*

"A. Yes, sir." [Emphasis supplied.]

The court member's questions as well as the answers he designedly obtained are convincing proof that Goodwin's plea and conviction were used for the very purpose for which they were inadmissible—as evidence of this accused's guilt. United States v Toner, supra. Indeed, the interrogation of Goodwin

by the member could have no other purpose than to parade before the other members of the court-martial the forbidden inference. Nor does it matter that there was no objection to the member's questions, for, as pointed out by the majority opinion, the error in introducing evidence of Goodwin's plea and conviction was appropriately preserved. I advert to the quoted examination only to demonstrate its prejudicial impact.

Despite the effect of the law officer's ruling thus shown in the record, my brothers find its impression negligible in view of their conclusion that the evidence of guilt is compelling. I am quite unable to join in that view. The accused's story is not so incredible that the record may be characterized as permitting no finding other than that of guilty. It may be true that none of us would accept his version of the incident were we sitting as members of the court-martial. However, we are appellate judges, and if it can be fairly stated that his testimony may have been true, we are not at liberty so to reject it. In my opinion, it is quite possible that a drunken, inexperienced squad leader, under the circumstances demonstrated in this record, might decide to utilize the method allegedly employed here in order to teach careless recruits a practical lesson. His admittedly intoxicated state might lead to many errors in the division of the wallets. That his accomplices thought otherwise does not make his story unbelievable as a matter of law, for we are taught that their testimony must be received with caution. Manual for Courts-Martial, supra, paragraph 153a; United States v Allums, 5 USCMA 435, 18 CMR 59. In short, I am not convinced that accused's guilt of larceny is so glaringly demonstrated that we may cavalierly dismiss his sworn declarations.

As I am certain that Goodwin's plea of guilty and conviction were improperly introduced by the trial counsel and utilized by at least one member of the court as a means of securing Humble's conviction, I believe the error was prejudicial.

I would reverse the decision of the board of review.