UNITED STATES, Appellee

v

RAFAEL DOMENECH, Airman First Class,
U. S. Air Force, Appellant

18 USCMA 314, 40 CMR 26

315

No. 21,493

May 16, 1969

*Captain John T. Dorman* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Major Robert W. Vayda* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted by special court-martial of two specifications of assault with a means likely to produce grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928, and sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $90.00 per month for six months, and reduction to the grade of airman basic. The convening authority approved the findings and sentence as did the officer exercising general court-martial jurisdiction. However, the latter directed that the accused be sent to the retraining facility at Lowry Air Force Base, Colorado. An Air Force board of review affirmed the findings and sentence. We granted review on the following three issues raised by appellate defense counsel:

(1) The evidence is insufficient in fact and law to support the findings of guilty of the Charge and its specifications.

(2) The president abandoned his role as an impartial fact finder and became an advocate for the prosecution.

(3) The board of review erred in its determination that the accused was not prejudiced by trial counsel's closing argument.

Reduced to its essentials, the evidence of record reflected that Airmen McAfee and Clegg were attacked by two unknown assailants outside Carmen's Place, a bar on the island of Guam, on the evening of February 23, 1968. Each received knife wounds during the struggle. Neither victim could identify their assailants but described them as being shirtless and as varying considerably in height. When one of the men swung at Airman Clegg he saw something that appeared to be a knife in his hand. A witness saw the smaller of the two assailants with something shiny in his hand. Other witnesses, who had previously observed and heard a tall and a short man, both unknown, speaking in Spanish, testified seeing the affray with the victims, following which the two assailants proceeded on foot toward the barracks at Marbo. An Air Force bus driver picked up two shirtless men on the road halfway between Carmen's Place and Marbo on the same evening. He could not identify them but they had smudges of blood on their chests. Both the accused, a Spanish-speaking short man, and Sergeant M, a tall man, were identified as patrons of Carmen's Place that night. Sergeant M testified that he and the accused were together at Carmen's. After leaving, the Sergeant engaged in a fight with an unknown individual.[1] He did not have a

---

[1] In argument on findings, individual defense counsel conceded that the Sergeant fought with McAfee.

316

knife with him nor did he use one in the encounter. He did not see the accused fighting. On the way back to Marbo, he and the accused walked a long way and then boarded a bus. The defense presented no evidence on the merits.

Evidence that the accused committed the assaults upon the two victims was circumstantial. No one testified that he recognized the accused as the person who had assaulted McAfee and Clegg. The evidence did, however, place the accused in Carmen's Place on the evening in question and did establish that he was constantly in the company of Sergeant M, his friend, until they returned to Marbo together. When Sergeant M engaged in a fight, the accused, according to the Sergeant's testimony, was nearby, although he did not see him fighting. They then left together and rode the same bus to Marbo. Two persons, one tall and one short, with blood on them boarded the bus between Carmen's Place and Marbo.

It is a well-established general principle that the guilt of an accused may ■■■■■■ be proved by circumstantial evidence. See 30 Am Jur 2d, Evidence, § 1125, page 292, *et seq.* The real issue, in such circumstances, is whether the circumstantial evidence alone, or in connection with other evidence, is of such probative force as to enable the fact finders to say that the accused is guilty beyond a reasonable doubt. 30 Am Jur, supra, footnote citations 11–13, at page 295. As we stated in United States v Mason, 8 USCMA 329, 332, 24 CMR 139:

"The Manual [for Courts-Martial, United States, 1951, paragraph 74*a*] does not promulgate the measure of proof required to establish the guilt of the accused. Rather it simply represents a discussion of the standard of proof which obtains in the Federal criminal courts and which is embodied in the Uniform Code of Military Justice, that is, that the accused's guilt must be established beyond a reasonable doubt. Article 51, Uniform Code

of Military Justice, 10 USC § 851. In that regard there is no difference between a case based upon direct evidence and one predicated upon circumstantial evidence. As the United States Supreme Court said in Holland v United States, 348 US 121, 140, 99 L Ed 150, 75 S Ct 127 (1954), 'If the jury is convinced beyond a reasonable doubt, we can require no more.' "

Cf. United States v Walker, 6 USCMA 158, 19 CMR 284.

In the case at bar, the president on four separate occasions instructed the court that it must acquit the accused unless convinced of his guilt beyond a reasonable doubt. In addition to detailing the statutory requirements as delineated in Article 51, Code, supra, 10 USC § 851, he informed the fact finders that: (1) The presumption of innocence of the accused is alone sufficient to justify an acquittal unless the court is satisfied beyond a reasonable doubt of the accused's guilt from all the evidence in the case; (2) since the burden is on the Government to prove the accused's guilt beyond a reasonable doubt of every essential element of the crime charged, an accused has the right to rely upon failure of the prosecution to establish such proof; and (3) a reasonable doubt exists in any case when, after careful and impartial consideration of all of the evidence, the court members do not feel convinced to a moral certainty that an accused is guilty of the offenses charged. In addition, he correctly defined direct and circumstantial evidence, told them of the legal value of such evidence, and again instructed that, "[a]fter weighing all the evidence, if you are not convinced of the guilt of the accused beyond a reasonable doubt, you must find him not guilty."

Plainly, the evidence is sufficient in law to establish the commission of the offense by someone. ■■■■■■ United States v Smith, 17 USCMA 55, 37 CMR 319; United States v Snearley, 15 USCMA 462, 35 CMR 434. In addition, the permissible inferences flowing from

317

the evidence concerning the accused's presence at the scene, together with the instructions of the president, were, in our view, sufficient for the fact finders to find beyond a reasonable doubt that the accused was guilty as charged. United States v Hunter, 2 USCMA 37, 6 CMR 37; United States v Mason; United States v Walker, both supra. We will not disturb that finding. United States v Holland, supra.

The second issue mainly concerns the recall and questioning of witnesses by the court and trial counsel after the prosecution had rested its case and defense counsel had unsuccessfully moved for a finding of not guilty based on a contention of insufficient evidence. Four witnesses, one of whom was Sergeant M, were recalled and questioned extensively. Defense counsel objected to the questions of trial counsel, alleging that he was reopening and perfecting his case. However, he was assured that this was proper practice in military procedure if the court so permits. Paragraph 71, Manual, supra. The court president authorized trial counsel to proceed. See also paragraph 54b, Manual, supra.

We have many times held that court members are entitled to examine the witnesses before them, including the accused, but, in so acting, they must not depart from their role as impartial arbiters of guilt or innocence and become partisan advocates for either side. See United States v Pratt, 15 USCMA 558, 36 CMR 56, and cases cited at page 562. The touchstone in determining whether court members have exceeded fair bounds in questioning witnesses is not the extent of the inquiry but "whether the triers of fact were willing to accord fair consideration to all the evidence." United States v Kemp, 13 USCMA 89, 92, 32 CMR 89. See also United States v Erb, 12 USCMA 524, 31 CMR 110. The recall of former as well as additional witnesses is not without authority.

**318**

Paragraph 54b, Manual, supra, provides:

"The court is not obliged to content itself with the evidence adduced by the parties. When such evidence appears to be insufficient for a proper determination of the matter before it, or when not satisfied that it has received all available admissible evidence on an issue before it, the court may take appropriate action with a view to obtaining available additional evidence. The court may, for instance, require the trial counsel to recall a witness, to summon new witnesses, or to make an investigation or inquiry along certain lines with a view to discovering and producing additional evidence."

Without belaboring the point, we have carefully examined the manner of inquiry and the testimony adduced through this procedure and do not find any partisan advocacy nor any propensity to convict regardless of the evidence. United States v Kemp, supra. We agree with the board of review that the question asked served to clarify areas of earlier testimony and evinced no partiality against the accused. United States v Erb, supra.

With reference to the third issue, we believe that the board of review did not err in its determination that the accused was not prejudiced by trial counsel's closing argument.

In cross-examination of Sergeant M, defense counsel, by way of impeachment, elicited testimony from the Sergeant that when he was first questioned by agents of the Office of Special Investigations, he lied to them about the events of the evening in question. He said that he had remained in the barracks all evening. He admittedly did so because they told him they were going to charge him "with attempted murder or what you call 'aggravated assault.'" He lied to protect himself. Later, when offered a chance to plead guilty under Article 15, Code, supra, 10 USC § 815, he did so and was given a suspension in rank as punishment.

In his argument on findings, trial counsel referred to this action against Sergeant M while perfecting his contention that it was not Sergeant M but the accused who did the stabbing of the victim McAfee. The latter did not know which of his attackers inflicted the cuts on him. In his rebuttal argument, trial counsel spoke only of the testimony of Sergeant M, whom he described as a pivotal witness, and again referred to his prior punishment under Article 15, Code, supra. He contended that because of the Commanding Officer's nonjudicial punishment, Sergeant M "cannot be punished again for this offense, and has no reason now to come into court and lie to this court about what happened." In that connection, he specifically called attention to the fact that the Sergeant "did testify that he did not have a knife or use a knife on the night in question." Even assuming error, the board of review did not believe the accused was prejudiced by trial counsel's argument.

The effect of trial counsel's arguments, as we view them, was that the same authority who directed that the accused be tried for two specifications of assault with a means likely to produce grievous bodily harm, had already decided that Sergeant M's part in the affair was only a minor one as evidenced by the type of legal action taken. This, however, was a highly contested issue—whether the Sergeant had in fact used a knife in his fight with McAfee. Someone had, as evidenced by McAfee's wounds. Trial counsel pointed the finger of guilt at the accused when he said that the Sergeant testified "he did not have a knife or use a knife on the night in question" and since he has been punished "has no reason now to come into court and lie to this court about what happened." He "has been punished and cannot be punished again for this offense. . . . He is off the hook."

Initially, we point out that trial counsel was in error when he informed the court-martial that Sergeant M, after receiving nonjudicial punishment under Article 15, could not "be punished again for this offense." Article 15(f), Code, supra, provides:

"The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty."

In United States v Fretwell, 11 USCMA 377, 29 CMR 193, this Court had occasion to interpret this portion of the cited Article. In that case, we all agreed that since the Congress had intended Article 15 to amount to no more than a summary disciplinary proceeding, punishment thereunder was not judicial punishment and was not a bar to subsequent trial by court-martial for the same offense, if the offense involved was not minor in nature. The majority in *Fretwell* held that his offense, being found drunk on duty, was not minor and was further aggravated by the fact that Lieutenant Fretwell was an officer and, at the time of the alleged offense, the officer-of-the-deck for the midwatch on an aircraft carrier. I disagreed with the majority's view that the circumstances surrounding the offense should also be considered in determining whether the offense was minor. I believed we should have held as a matter of law that drunkenness on duty, in time of peace, was a minor offense, since the prescribed punishment for this offense extended only to a bad-conduct discharge "('designed as a punishment for bad conduct rather than as a punishment for *serious offenses of either a civil or military nature,*' Manual, supra, paragraph 76a (emphasis supplied))," forfeiture of all pay and allowances, and confinement at hard labor for nine months. *Ibid.*, at page 383.

In the case at bar, we are not informed of the nature of the offense for which Sergeant M was punished under Article 15. For the purpose of this discussion, we can infer, from the tenor of the questioning and arguments at trial, that it concerned the fight between the Sergeant and Airman McAfee. If the charge was, as in the case at bar, assault with a means likely to produce grievous bodily harm, it cannot be contended that this was minor in nature for, when tried by general court-martial, the maximum imposable punishment extends to dishonorable discharge, total forfeitures, and confinement at hard labor for three years. Manual, supra, paragraph 127c. Whether or not Sergeant M wielded the knife in the affray, he could properly be charged with this offense as a principal (United States v Brown, 7 USCMA 286, 22 CMR 76), despite any previous action taken under Article 15. United States v Fretwell, supra.

Appellate defense counsel urge that we find that the trial counsel erred to the prejudice of the accused by asking the court to consider the Sergeant's Article 15 punishment as evidence of his identity as one of the assailants and as evidence that he had committed only a minor offense during the affray. They contend that the imposition of Article 15 punishment upon another person is not admissible against an accused to establish the truth of any fact involved in the current trial. Their basic premise for alleging error is the general principle of law that evidence that one of several accused entered a plea of guilty or was convicted on a separate trial is not admissible on the issue of the guilt of another.

In United States v Humble, 11 USCMA 38, 28 CMR 262 (see also United States v Nix, 11 USCMA 691, 29 CMR 507), this Court held that evidence that one of several accused entered *a plea of guilty or was convicted on a separate trial* is not admissible on the issue of guilt of another accused; that this rule applied not only when the accused are charged with the same

offense, but extended to a situation in which the offenses arose out of the same circumstances. The question of prejudice, however, divided the Court, with the majority taking the view that evidence of the conviction of the one with whom the accused, according to the specification, allegedly acted in concert in committing the offense and the conviction of an accessory after the fact, did not prejudice that accused. In my view, the evidence reflected that at least one member of the court, as shown by his questioning of the coaccused, utilized the conviction of the latter as a means of securing Humble's conviction.

The Government, while acknowledging the general principle of law discussed in *Humble*, asserts that the appellant may not allege error upon trial counsel's argument since it was appellant's own counsel who initially disclosed the Article 15 punishment in his cross-examination of Sergeant M. According to the Government's argument, once the matter is introduced by the defense it is open to comment by the prosecution. See Annotation: Conviction Or Guilty Plea Of Another, 48 ALR2d 1016, 1031.

The impeachment of a witness by use of evidence that he has previously been convicted under Article 15 is a matter within the sound discretion of the law officer. United States v Hutchins, 6 USCMA 17, 19 CMR 143. It is, of course, proper to question a witness concerning acts of misconduct that are relevant and material. United States v Long, 2 USCMA 60, 6 CMR 60; United States v Berthiaume, 5 USCMA 669, 18 CMR 293. The test, as we said in United States v Hutchins, supra, "is simply one of whether the act of misconduct is a 'matter touching upon his (the witness') worthiness of belief.' Manual for Courts-Martial, United States, 1951, paragraph 149b(1)." *Ibid.*, at page 19. But see United States v Robertson, 14 USCMA 328, 34 CMR 108, regarding the standard necessary for the impeachment of an accused.

Whether the matter of the Article

15 was proper for the purpose of impeachment or not, need ▮ not deter us. We do know that trial counsel's subsequent use of it in argument, to establish that the accused was guilty of the charged offense, was error. United States v Humble, supra. As stated in 2 Wharton, Criminal Evidence, 12th ed, § 439:

". . . as a general rule, the fact that a confederate or coconspirator of the defendant pleaded guilty, or has been found guilty, is inadmissible on the issue of the guilt of the defendant who is separately tried. (State v Gargano, 99 Conn 103, 121 A 657; Webster v Com., 223 Ky 369, 3 SW2d 754; Pryor v State, 34 Okla Crim Rep 131, 245 P 669.) It is error to permit the jury to know that a jointly accused defendant has been convicted or has pleaded guilty (State v Aubuchon (Mo) 381 SW2d 807), as the fact that a codefendant pleaded guilty is merely a confession as to him and is not admissible to show that the defendant is guility [sic]. (State v Pikul, 150 Conn 195, 187 A2d 442.)"

If evidence that a coactor was previously *convicted* for the same crime is inadmissible on the question of the guilt of the accused, or to prove a fact in issue, it can hardly be asserted that *administrative disciplinary action* under Article 15, which is *not a judicial conviction,* is competent for this purpose. United States v Fretwell, supra.

Evidence of the *conviction* of a coactor, however, is admissible,

". . . not as substantive evidence concerning the guilt of the defendant, but *to impeach such convicted person should he take the stand to testify in the trial of the defendant.* (Webster v Com., 223 Ky 369, 3 SW2d 754.) *But in such case, the purpose of the evidence and its limitation to the witness must be explained to the jury.* (Webster v Com. (Ky) supra.)" [2 Wharton, supra.] [Emphasis supplied.]

There was no such instruction to the court in this case.

While we hold error as to trial counsel's argument, we do not believe that the accused was prejudiced thereby. As Government appellate counsel point out, the matter was first brought to the attention of the court by defense counsel. Since defense counsel introduced the evidence in order to impeach the witness, he should have objected to the *nature* of trial counsel's argument. At the very least, he should have requested that the law officer give an appropriate instruction on the limited use of such evidence. As we said in United States v Schreiber, 5 USCMA 602, 609, 18 CMR 226, "the absence of a request for special instructions precludes consideration upon appeal."

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge DARDEN concur.