UNITED STATES

v.

**Airman First Class Nathan E. DANIELS, FR 156–46–0858 Headquarters, 2d Combat Support Group Eighth Air Force (SAC).**

**ACM S24509.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 March 1977.

Decided 17 Aug. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Major Alvin E. Schlechter and Major William H. Seckinger, USAFR.

Before ABRAMS, EARLY and FORAY, Appellate Military Judges.

DECISION

ABRAMS, Chief Judge:

Tried by special court-martial with members, the accused was convicted, contrary to his pleas, of disrespect toward his superior officer, failing to obey a lawful order, and drunk and disorderly in station, in violation of Articles 89, 92 and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 892, 934. The convening authority approved the findings with the exception of the charge of disrespect, which he reduced to wrongful use of reproachful words, in violation of Article 117 of the Code. The approved sentence provides for a bad conduct discharge and reduction to airman basic.

Of the three errors brought to our attention by appellate defense counsel, our disposition of the first assigned error moots the efficacy of the others.

█ We agree with the contention that the accused was substantially prejudiced by the admission into evidence by the Government of uncharged misconduct prior to findings.

The most serious charge of which the accused stands convicted is failing to obey the order of Sergeant Clark, a security policeman, to halt. Sergeant Clark was called to the NCO Club to evict the accused. The night manager had called the security police because the accused refused to remove his hat inside the club as the rules required. When Sergeant Clark first confronted the accused in the club, the latter was bareheaded. At first, he resisted Clark's suggestion that he accompany him to the lobby. However, a few minutes later the accused left the club voluntarily. Clark followed him out and requested his I.D. card. The accused demurred until Clark changed the request to a direct order. As he then became loud and profane, Sergeant Clark decided to place him under apprehension. He so advised the accused and began to read him his rights in accordance with Article 31, *Code*, supra. The accused threw up his hands, stated he did not want to hear it, and proceeded to walk away from Clark, heading toward the parking lot. Clark first told him to come back when they were approximately five feet apart. He made no response, but continued walking. Clark repeated his order twice more with no result. Instead of giving chase, Clark went to seek the aid of other security policemen. Shortly thereafter, the accused was apprehended some distance away, apparently still walking at a normal pace.

The defense presented evidence that earlier in the evening the accused consumed more than his share of a formidable quantity of vodka and beer. The accused testified that he was intoxicated at the time of his confrontation with Clark. He felt his treatment in the NCO Club was unfair, and he saw no reason for the "hassling" he was getting from Sergeant Clark as he had left the club voluntarily. When Clark started to advise him of his rights, he turned around and walked away in disgust. He insisted that he never heard Clark tell him to halt or stop.

Cross-examination began with the following questions and answers:

TC: Airman Daniels, have you ever received an Article 15?

WIT: Yes sir.

TC: What was it for?

WIT: Shop lifting in 75.

TC: What did you steal?

WIT: A cassette tape.

TC: Where did you steal it?

WIT: The BX.

TC: Would you tell this court why they should believe a thief?

The prosecutor called several witnesses for the announced purpose of attacking the accused's truth and veracity. He asked both accused's first sergeant and his former commander whether they had conversations with him concerning letters of reprimand as well as nonjudicial punishment.

Neither counsel for the accused objected to the interjection of uncharged misconduct by trial counsel. The military judge took no action, *sua sponte*, to strike this mention of uncharged misconduct, nor did he subsequently instruct the court on the limited purpose of such evidence.[1] The trial counsel used this evidence of nonjudicial punishment tellingly in both opening and closing argument:

Finally, in the defense case, we had the testimony of the accused. Gentlemen, if you don't have any trouble with anything else in this case, you ought to have some trouble with that. You ought to wonder about that testimony. First of all because it is the testimony of a thief. Airman Daniels admitted that he has re-

---

1. Admittedly, such instructions would not have cured the error as this evidence was not admissible for any purpose.

ceived an Article 15 for shoplifting and *the reason that evidence was admissible is because it directly relates to his truth and veracity.* That is why it was admitted.

\*    \*    \*    \*    \*    \*

Gentlemen, this is a classic case of who do you believe? Sergeant Clark or Airman Daniels? Who is the person that is worthy of belief?  .   .   . The security policeman, Sergeant Clark, or the accused, who has admitted that he has received an Article 15 for shoplifting? [Emphasis supplied.]

■ The staff judge advocate, in his review, conceded that the admission of this evidence was error, as military law forbids the impeachment of the accused by introducing specific acts of misconduct not resulting in a conviction of a felony or crime of moral turpitude. *United States v. Domenech,* 18 U.S.C.M.A. 314, 40 C.M.R. 26 (1969); *United States v. Miller,* 14 U.S.C. M.A. 412, 34 C.M.R. 192 (1964); *United States v. Kindler,* 14 U.S.C.M.A. 394, 34 C.M.R. 174 (1964); *United States v. Robertson,* 14 U.S.C.M.A. 328, 34 C.M.R. 108 (1963); Manual for Courts-Martial, 1969 (Rev.) paragraph 153*b*(2)(*b*). Nonjudicial punishment, of course, does not equate to a conviction. *United States v. Crawford,* 44 C.M.R. 541 (A.F.C.M.R.1971).

■ Because of this error, the convening authority reduced the charge of disrespect to one of using reproachful words, on the theory that no prejudice to the accused resulted as to either this lesser offense or the charge of drunk and disorderly. We agree, but we cannot accept the further contention that the improper admission of evidence of uncharged misconduct clearly resulted in no fair risk of prejudice to the accused with respect to the charge of failing to obey Sergeant Clark's order. It is true that compelling evidence of guilt may preclude prejudice from improper cross-examination of an accused concerning specific acts of misconduct not resulting in a convic-

tion of a felony or a crime of moral turpitude. *United States v. Miller,* supra; *United States v. Hayes,* 48 C.M.R. 67 (A.F.C.M. R.1973); *United States v. Poinsett,* No. 22179, 3 M.J. 697 (A.F.C.M.R.1977); *United States v. Hinote,* 51 C.M.R. 704, 1 M.J. 776 (A.F.C.M.R.1976). However, we are not persuaded that the evidence of guilt regarding this charge is of a compelling nature. Although disputed by several Government witnesses, there is ample evidence to corroborate the accused's insistence that he was intoxicated at the time of his confrontation with Sergeant Clark. His assertion that he did not hear the order to stop was not shaken upon cross-examination. The evidence that he walked away from Clark at a normal pace and was still so walking when found lends substance to his story. If the court harbored a reasonable doubt as to whether accused had knowledge of the order, it was bound to acquit him of that charge. It is sheer speculation to conclude that the court's rejection of his testimony was in no way influenced by trial counsel's argument that the testimony of a thief is not worthy of belief.

Although a rehearing could be ordered as to this charge, we do not deem it appropriate to do so. Accordingly, for the reasons set forth above, the findings of guilty of Additional Charge II and its specification are incorrect in law and are set aside and ordered dismissed. The findings of guilty of Additional Charge I and its specification and Additional Charge III and its specification are correct in law and fact and are affirmed.[2]

■ In reassessing the sentence, we note that a punitive discharge is not authorized for the remaining charges except by virtue of the application of Manual for Courts-Martial, supra, paragraph 127*c*, Section B. Our past experience convinces us that a punitive discharge is not appropriate for an airman whose sole criminal conduct consisted of using reproachful words to a security police officer while being held in the police station for drunk and disorderly. In the

2. The accused was acquitted of the original charge of going from his appointed place of

duty without proper authority, in violation of Article 86, Uniform Code of Military Justice.

exercise of our responsibility to determine an appropriate sentence, we have the authority to change the form of penalty so long as the severity of the sentence is not increased by our action. *United States v. Prow*, 13 U.S.C.M.A. 63, 32 C.M.R. 63 (1962); *United States v. Johnson*, 12 U.S.C. M.A. 640, 31 C.M.R. 226 (1962). We therefore find appropriate and affirm only so much of the sentence as provides through commutation for forfeiture of $100.00 per month for two months and reduction to airman basic. The forfeitures will take effect as of 26 May 1977, the date the sentence was approved by the general court-martial convening authority.

EARLY, Senior Judge, and FORAY, Judge, concur.