UNITED STATES, Appellee,

v.

Keith O. BROWN, Private, U. S. Army, Appellant.

No. 33,194.
CM 433702.

U. S. Court of Military Appeals.

Oct. 3, 1977.

Captain Buren R. Shields, III, argued the cause for Appellant, Accused. With him on the briefs were Colonel Alton H. Harvey, Colonel Robert B. Clarke, Lieutenant Colonel John R. Thornock, and Captain Barry J. Wendt.

Captain Nancy Battaglia argued the cause for Appellee, United States. With her on the briefs were Colonel Thomas H. Davis, Major John T. Sherwood, Jr., and Captain John F. DePue.

Opinion of the Court

COOK, Judge:

This appeal questions the sufficiency of the evidence to sustain the appellant's conviction of robbery in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922.

On the night of January 21, 1975, at approximately 11:10 or 11:15 p. m., in the area of the Kurpfalzbrucke, Mannheim, Federal Republic of Germany, Josias Da Silva Rodriguez was robbed by three men. The appellant submits that the evidence of record does not adequately identify him as one of the three robbers. We agree.

Although Rodriguez passed out during the incident, he regained consciousness in time to observe the three men running away. He testified the men who robbed him were black and that one of them was wearing blue tennis shoes, blue jeans with a white spot on the right hip, and a green jacket. When he was asked to make an identification during the trial he was unable to identify the appellant. Rather, he identified a spectator.[1] Rodriguez further noted on cross-examination that shortly af-

_____

1. Pursuant to a defense request, the appellant was intermingled with the spectators when Rodriguez was asked to make an identification.

ter the incident he was escorted by the German police to several bars in the area in an attempt to locate his assailants. While he "pointed" out one man during this period, he was unsure of the identification. The German police had apprehended at least two black men. Upon returning to the police station, Rodriguez identified the only black man then present as one of his assailants. He specifically observed that the man was wearing blue jeans with a white spot on the right hip. During this period Rodriguez was experiencing a headache and was bleeding from injuries sustained in the robbery.

Juergen Hoffman, a German policeman, testified that the appellant was apprehended near the streetcar stop at Kurpfalzbrucke approximately 45 minutes after the incident. Appellant was wearing a field jacket, blue trousers with white stains, and blue tennis shoes. A small quantity of blood was observed on the field jacket, and the parties stipulated it was human blood, although there was no identification as to the type. Hoffman further testified that it was standard procedure to apprehend all black persons in the vicinity of a crime when any black person was implicated.

■ Specialist Myers testified for the defense to the effect that he and the appellant were in a bar on the night in question until approximately 11:45 p. m. They then proceeded to a second bar, where the appellant stayed until approximately midnight. He and appellant separated at this time because appellant anticipated catching a streetcar for the purpose of returning to the barracks.[2] Specialist Myers also testified that the wearing of "bleached out" blue jeans was common and several individuals were observed on the night of the

incident wearing this type of clothing. Appellant testified in his own defense substantially in accord with the testimony of Specialist Myers. He maintained that after he left Myers he was proceeding to the streetcar stop when he was apprehended by the German police. At this time, he was wearing blue tennis shoes and blue jeans with a white spot on the hip. He acknowledged he had told the police that the blood on his field jacket could have come from shaving.

Reaffirming earlier cases, in *United States v. Lowry*, 25 U.S.C.M.A. 85, 54 C.M.R. 85, 2 M.J. 55 (1976), this Court held that its review authority was limited to matters of law. *Accord, United States v. McCrary*, 1 U.S.C.M.A. 1, 1 C.M.R. 1 (1951). As we observed in *United States v. Taylor*, 21 U.S.C.M.A. 220, 222, 44 C.M.R. 274, 276 (1972) (emphasis in original):

The test to be applied in determining the sufficiency of the evidence is whether there is, in the record, some competent evidence from which the members of the court-martial, or the military judge in a trial alone, could find, *beyond a reasonable doubt*, the existence of every element of the offense charged. It is axiomatic that a conviction cannot be sustained on the basis of suspicion or surmise. *United States v. Papenheim*, 19 U.S.C.M.A. 203, 41 C.M.R. 203 (1970), and cases cited at page 205. *Cf. United States v. Lyons*, 11 U.S.C.M.A. 68, 28 C.M.R. 292 (1959).

■ Turning to the evidence in the present case, we find there was no identification of the appellant by the victim. Although the victim was permitted to testify that he had identified a person in the police station on the night of the incident, the man involved was not shown to have been the appellant.[3] While there was evidence

2. The appellant's alibi defense was rejected by the triers of fact, and their resolution of this factual issue is binding on the Court. *United States v. Lowry*, 25 U.S.C.M.A. 85, 54 C.M.R. 85, 2 M.J. 55 (1976).
3. Although Juergen Hoffman was asked if the man whom the victim identified in the police station was the appellant, the military judge precluded him from answering the question.

Whether the victim's testimony that he had identified someone was properly admitted into evidence is questionable. *Compare United States v. Burge*, 1 M.J. 408 (1976), *with United States v. Parham*, 14 U.S.C.M.A. 161, 33 C.M.R. 373 (1963). However, the issue was neither granted nor argued before the Court, and in view of the disposition which we order, we will assume for the purpose of this appeal that it

that appellant was apprehended and returned to the police station, there was no evidence that appellant was the man so identified. Furthermore, as more than one black man was apprehended, we cannot infer that appellant was the black man in the police station when the identification was made by the victim.

■ Thus, the evidence of appellant's identity was limited to the similarity of the clothing which he was wearing with that worn by one of the assailants and the fact that he was black. Racial identity alone is obviously not sufficient to sustain a conviction. Nor do we believe the clothing worn by the appellant was unique as the evidence of record reflects that "bleached out" blue jeans was a common item in the area. Furthermore, the presence of a fatigue jacket in an area inhabited by military personnel is rather common. Although there was evidence the fatigue jacket worn by the appellant contained a spot of blood, this blood was never related to the victim in any manner. Indeed, the victim testified that one of the assailants got blood on his shoes—not his fatigue jacket. Finally, there is nothing in the record to indicate that the presence of tennis shoes was a rarity in the area. In summary, it appears the appellant was apprehended in an area of a crime primarily because he was black. Furthermore, the area in question was apparently a bar area located near a United States military installation; and while appellant was wearing clothing similar to that of one of the assailants, such clothing was of a type normally worn by off duty military personnel. The Government correctly observes that identity may be proven by circumstantial evidence. *See United States v. Domenech,* 18 U.S.C.M.A. 314, 40 C.M.R. 26 (1969); *United States v. Hunter,* 2 U.S.C.M.A. 37, 6 C.M.R. 37 (1952). However, the evidence in the present case is insufficient to sustain a finding of guilty beyond a reasonable doubt as a matter of law.

was properly admitted and view the evidence in the light most favorable to the Government.

The decision of the United States Army Court of Military Review is reversed and the charge and its specification are dismissed.

Judge PERRY concurs.

FLETCHER, Chief Judge (dissenting):

The majority opinion enlarges the scope of Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867, which provides that "[t]he Court of Military Appeals *shall* take action *only* with respect to *matters of law.*" (Emphasis added.) I read the word "shall" as a mandatory codal direction, not a permissive one. Preceding the sentence quoted above is language providing that "[i]n any case reviewed by it, the Court of Military Appeals may act *only* with respect to the findings and sentence as approved by the convening authority and *as affirmed or set aside as incorrect in law* by the" Court of Military Review. (Emphasis added.)

As the author judge here said when speaking for a unanimous court in *United States v. Lowry,* 25 U.S.C.M.A. 85, 89, 54 C.M.R. 85, 89, 2 M.J. 55, 58 (1976):

> In any event, to the extent the United States Supreme Court chooses to review a question of fact within its independent examination of the record, this authority is specifically granted by the United States Constitution, Article III, § 2. Because Article 67(d) limits our authority to matters of law, the practice of the United States Supreme Court is not controlling and we have no authority to review questions of fact.[1]

In the present case the majority might find support for their disposition were the question a mixed one of fact and law. However, the question of identity is singularly a question of fact, and thus outside our jurisdictional scope. While the logic embodied in the majority opinion might have successful influence in presentation to

1. *See United States v. Chase,* 1 M.J. 275, 278 (1976) and *United States v. Collier,* 1 M.J. 358, 366 (1976).

a jury, it cannot bring into existence relief from an appellate court only empowered to review questions of law. Indeed, the proposition that this Court has a vision superior to the trier of fact at the trial level or the reviewers of facts—the Courts of Military Review,[2] can only be regarded as chimerical. Since there is no legislative support for the mechanism employed by the majority, I would affirm.

2. Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c).