UNITED STATES, Appellee

v

WILLIAM C. WHITE, Airman Second Class,
U. S. Air Force, Appellant

14 USCMA 610, 34 CMR 390

No. 17,484

June 19, 1964

*Lieutenant Colonel Andrew S. Horton* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major Neil Kasdan* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Tried by a special court-martial convened at Wurtsmith Air Force Base, Michigan, the accused pleaded guilty to four counts of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, forfeiture of $70.00 per month for six months, confinement at hard labor for six months, and reduction to the grade of Airman Basic. Intermediate appellate authorities affirmed, with a reduction at the supervisory level of one month in the term of confinement and forfeitures. We granted accused's petition for review upon the issue whether:

"THE PRESIDENT OF THE COURT DEPARTED FROM HIS PROPER ROLE OF IMPARTIALITY AND ASSUMED THE ROLE OF PROSECUTOR."

Each of the specifications before the court-martial alleged the theft of aircraft maintenance tools which, in some instances, were stored in toolboxes. At the commencement of the trial, the defense counsel examined the president of the court on *voir dire* and determined that he was unfamiliar with accused's case but had "discussed a case of tool box theft." Nevertheless, he had formed no opinions, particularly with reference to the question of sentence, and would not do so "until I had all the facts." No challenges were leveled by counsel.

Following entry of accused's guilty plea and his persistence therein after full and proper explanation, the Government, in accordance with Air Force practice, presented a *prima facie* case in support of the allegations against White.

During the testimony of Airman

Favorite, who established on direct examination the loss of his maintenance tools, the president of the court developed the following information:

"Q: Are you ever called out on alert?

"A: Yes, we are, sir.

"Q: What do you perform when you go out on the line?

"A: Mostly, sir, we send the aircraft off, and if they are broken they come back to the cells and then we immediately fix them.

"Q: With these tools missing, would this hamper your work?

"A: Yes, it would.

"Q: What length of time did it take for you to get these tools back again from a resupply?

"A: It's taking quite a long time, sir. I still haven't got all of them back yet.

"Q: Is this hampering your work at the present time?

"A: No, sir, not at the present time."

Similarly, when Airman Brugger, also a mechanic, appeared on the stand, the president again explored this area:

"Q: The tools, when they were missing, if you were called out on an alert—do you have to attend an alert?

"Defense: I object to that question as being irrelevant.

"President: Don't I have a right to ask that question?

"Prosecution: You, as the president. . . .

"President: I'll ask it anyhow.

"Q: Do you get called out to go on alert?

"A: Yes, sir.

"Q: What do you perform when you get called out on alert?

"A: Our job is to pull an inspection on the aircraft when they call an alert, to make sure that that aircraft is in commission—if it's flyable.

"Q: Are you required to use your tools at that time?

"A: Sometimes we are, sir, if we find anything wrong with the aircraft that needs fixed [sic] before it can fly.

"Q: Would this hamper your work without the tools?

"Defense: Sir, I again object to this question as irrelevant.

"Q: Answer my question.

"A: Would you repeat the question?

"Q: Would this hamper your work in anyway with your tools missing?

"A: Yes, sir."

After findings of guilty had been announced and evidence in extenuation and mitigation presented, arguments were had on the question of sentence. Answering the defense counsel's plea for clement treatment, the prosecution asked for imposition of "the maximum sentence authorized by law" and pointed out that, in every instance, accused's misconduct "deprived them [the mechanics], to some extent, of their ability to perform a dedicated job."

Military fact finders, including the president of a special court-martial, have the right to question witnesses for the purpose of clarifying matters in evidence or to obtain information relevant to the issues before them. United States v Marshall, 12 USCMA 117, 30 CMR 117; United States v Smith, 6 USCMA 521, 20 CMR 237. But, in performing this function, no member may cast aside his impartial role and become a partisan advocate for either side. United States v Erb, 12 USCMA 524, 31 CMR 110; United States v Flagg, 11 USCMA 636, 29 CMR 452; United States v Blankenship, 7 USCMA 328, 22 CMR 118. And, as was noted in United States v Flagg, supra, at page 640, when partisanship is displayed, it is normally at the expense of the defendant.

There can be no doubt that, in this record, precisely such a situation is depicted. The president, without the slightest foundation in the evidence, undertook to develop from two witnesses an imaginary situation which would grossly aggravate the offenses to which

accused pleaded guilty by independently establishing that his misconduct may have gravely affected an important mission of the Air Force. The tone of his examination, ordinarily so difficult to ascertain from the cold pages of a transcript, United States v Flagg, supra, is emphasized by his tart remark, on defense objection, that whether or not he had a right to "ask that question . . . I'll ask it anyhow."

This participation, the subject of which was subsequently expressly incorporated in the trial counsel's argument, was, as noted by the staff judge advocate in the post-trial review, "no credit to the president, either in his judicial role, or as a senior officer." We disagree, however, with his conclusion and that of the board of review, that the matter had no substantial impact on the accused's sentence or that any prejudice might be purged through elimination from the imposed maximum sentence of one month's confinement and forfeitures. Cf. United States v Flagg, supra, concurring opinion of Judge Latimer, at page 641. While White's plea of guilty concededly removes any basis for an attack upon the findings, see United States v Brown, 13 USCMA 485, 33 CMR 17, an accused is equally entitled to a fair hearing on the question of his punishment. As we noted in United States v Allen, 8 USCMA 504, 25 CMR 8, at page 507:

". . . True, the plea disposes of the necessity for the presentation of evidence of guilt and it eliminates the requirement of formal instructions to the court-martial. United States v Lucas, 1 USCMA 19, 1 CMR 19. But there is still the vital question of sentence. Speaking of the importance of this question, we said in United States v Brasher, 2 USCMA 50, 52, 6 CMR 50: 'In a special and peculiar sense the sentence of the law for adjudged misconduct . . . is the product of a trial court. It alone, of all agencies of the law, is authorized to "adjudge" the law's penalty.'"

So also was Airman White entitled to have a fair and impartial court determine the question which, in no illusory sense, affects his "liberty, property, social standing—in fact, his whole future." United States v Allen, supra, at page 507. And, in light of the favorable evidence in extenuation and mitigation and lack of any previous convictions, it is impossible to conclude that the president's advocacy of a major aggravating factor did not weigh heavily in the court's determination to separate the accused punitively from the Air Force. There is at least a fair risk of such influence here presented, and the defense is required to meet no higher standard.

In sum, we reiterate our determination to enforce the principle, basic to all judicial systems, that every defendant be afforded a fair and impartial hearing both as to guilt and the sentence. United States v Blankenship; United States v Flagg, both supra. The partisan advocacy of the president in the case now before us deprived the accused of that undoubted right. Counsel sought to make his objection at trial and was peremptorily thrust aside. Despite the fact that the error was again asserted at every level of the proceedings, we regret to note it was simply brushed off as a bothersome, but unimportant, matter. We must, in light of its nature, register our obvious disagreement.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing on the sentence may be ordered.

Chief Judge QUINN and Judge KILDAY concur.