UNITED STATES, Appellee,

v.

Jose J. LAMELA, Private, U. S. Army, Appellant.

No. 36,000.

CM 435881.

U. S. Court of Military Appeals.

Aug. 27, 1979.

Appearances: For Appellant: *Captain William J. Carter* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Major Carlos A. Vallecillo, Captain David L. Holmes* (on brief); *Captain Demmon F. Canner.*

For Appellee: *Captain Michael J. Wall* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Michael B. Kennett* (on brief).

Opinion of the Court

FLETCHER, Chief Judge:

Contrary to his pleas, the appellant was found guilty of wrongful possession, trans-

fer and sale of five grams, more or less, of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The members of his general court-martial sentenced him to a dishonorable discharge, confinement at hard labor for 12 years, forfeiture of $150 pay per month for the same period and reduction to the lowest enlisted grade. The convening authority approved the sentence. After reassessment of the sentence on the basis of the entire record and an error unrelated to this appeal, the United States Army Court of Military Review reduced the period of confinement and forfeitures to 2 years.

The issue presented to this Court for determination is whether:

APPELLANT WAS SUBSTANTIALLY PREJUDICED BY THE MILITARY JUDGE'S DENIAL OF A DEFENSE CHALLENGE FOR CAUSE AGAINST COLONEL FORMAN AND LIEUTENANT WARDELL, TWO MEMBERS OF THE COURT WHO DEPARTED FROM THEIR IMPARTIAL ROLE AND BECAME PARTISAN PROSECUTION ADVOCATES.

This matter arose in the context of the sentencing portion of the appellant's court-martial. Taking the witness stand for the first time during his trial, Lamela made a sworn statement citing the improbability of his guilt and various incidents of mitigation from his family life and from previous military experience. The partisanship of the members was purportedly established by virtue of their subsequent direct questioning of the appellant concerning this testimony. The challenges against these two members were raised at an Article 39(a) session at the conclusion of their inquiries. No instructions whatsoever had been given earlier by the military judge to the members in this case as to the scope and nature of their questions to witnesses. *E. g.* para. 2–1, D.A. Pamphlet 27–9, *Military Judges' Guide* (1969).

 There is no doubt that a military accused is entitled to a fair hearing by an impartial body on the matter of his punishment. *See United States v. White,* 14 U.S. C.M.A. 610, 613, 34 C.M.R. 390, 393 (1964). Questioning by a court member of an accused is permitted for purposes of clarification of the latter's testimony or to be better informed in doubtful areas. It is not considered to detract from the fairness of the proceedings if it is accomplished in a nonpartisan manner. *See United States v. Carver,* 6 U.S.C.M.A. 258, 265, 19 C.M.R. 384, 391 (1955). Paragraph 149*b*(3), Manual for Courts-Martial, United States, 1969 (Revised edition), offers further elaboration on the proper scope of such inquiries.

(3) *Examination by the court or a member.* The general rule is that the court, including the military judge, and its members may ask a witness any question that either side might properly ask the witness. If new matter, not properly the subject of cross-examination of the witness on his previous testimony, is elicited by questions of the court or its members, both parties will be permitted to cross-examine the witness upon the new matter. *In questioning witnesses, including an accused who has become a witness, the court and its members must be careful not to depart from an impartial role.*

*In questioning an accused, the court and its members must confine themselves to questions which would be permissible on cross-examination of the accused by the prosecution.* In questioning a witness concerning the character of the accused, the court and its members must confine themselves to matters which could properly be inquired into by the prosecution.

. . .

*Questions by the court or its members and evidence elicited by these questions are subject to objection on proper grounds by either side.* The military judge, or the president of a special court-martial without a military judge, may require members to submit their questions to him either orally or in writing so that a ruling may be made on the propriety of the questions or course of questioning and so that the questions may be asked on behalf of the court in either their original or rephrased form by the military judge, president of the special

court-martial without a military judge, or trial counsel.

(Emphasis supplied).

It is implicit in the above Manual provision that the questions must be relevant and material, in addition, as evidenced in this case, there may exist some justified reluctance on the part of either counsel to object to the scope and tenor of these questions in open court because such objections may alienate the court members or be perceived by them as obstructing the course of justice. Accordingly, we believe it is important for the military judge to preliminarily instruct the members in some manner as to the nature of this questioning process and to closely monitor its occurrence. Such sound trial practice would greatly reduce the opportunity for complaints such as the appellant's without much expenditure of time and judicial resources.

■ The appellant initially asserts that the number of questions asked by these two court members established their partisan advocacy on behalf of the Government and the denial to him of a fair hearing on sentence. He bases this claim on the facts that they asked 90 of the 107 questions posed to him by the entire court panel and that such a number was almost three times more than the questions asked by the trial counsel. Admittedly under certain conditions, the sheer number of questions by a court member may highlight his bias against an accused or be an important factor in determining the existence of partiality in a member as to a particular issue in dispute. *See United States v. Shackleford,* 2 M.J. 17 (C.M.A.1976); *United States v. Dotson,* 21 U.S.C.M.A. 79, 81, 44 C.M.R. 133, 135 (1971). However, in the present case, the questioning occurred in the less strictly structured sentencing portion of the court-martial and after a long and somewhat detailed narrative statement by the appellant. Under such circumstances, we perceive no prosecutorial bent in these members simply due to the sheer number of their questions.

The appellant also contends that the types of questions asked by these members show beyond the possibility of doubt that they were not willing to accord fair consideration to all the evidence and, in fact, were biased against him. *See United States v. Domenech,* 18 U.S.C.M.A. 314, 40 C.M.R. 26 (1969). Such questions, it is alleged, were for the purpose of badgering the appellant rather than as a result of any need for clarification.

The appellant first cites a series of questions from Colonel Forman pertaining to the appellant's removal from the Personnel Reliability Program. It is argued that the refusal of this member to accept the appellant's testimony that drug usage did not produce the removal and his repeated inquiries as to this matter represent obvious partisan harassment of the appellant.

■ Prosecution Exhibit 1 established the fact that the appellant was disqualified from assignment to nuclear duty positions and that he was not recommended for further service. *See* para. 75*d*, Manual, *supra.* However, besides reference to a particular Army regulation, no reasons were given for these administrative classifications. The appellant in his sworn testimony referred to "a little hassle" he got involved in when he was in a different unit at a missile base prior to his arrival at Erlangen. Colonel Forman's initial questions were a reasonable attempt to clarify the facts surrounding these matters. Simply because curiosity existed on his part as to the particulars of this removal in no way demonstrates partiality. It was a proper matter for inquiry during the sentencing portion of his trial. *See* para. 149*b*(3). Manual, *supra.* The second group of questions as to these matters was in response to the appellant's explanation that his removal was a product of two non-judicial punishments and not drug usage. This court member, in light of his own military experience, found such an explanation unsatisfactory and he determined further inquiry was necessary as to the possible existence of an earlier positive urinalysis. We do not find such conduct necessarily indicative of partisan advocacy. It surely does not establish that this member had closed his mind to the complete explanation by the appellant of his removal.

The appellant also singles out several questions from Lieutenant Wardell which purportedly indicate hostility on this court member's part. He asserts first, that this member improperly inquired of the appellant as to his failure to meet his societal responsibilities by turning in "junkies" and reporting drug use. These questions were asked during the sentencing portion of trial and in the context of the appellant's testimonial implication that these same "junkies" had framed him. Such inquiries under these circumstances possess minimal relevance and raise no serious question as to this member's objectivity. Secondly, this member asked the appellant if he was a racist and where he got the money to pay his attorney. Serious doubt exists in our mind whether such questions are proper in terms of the general potential for prejudice they hold. Here, however, the questions clarified various statements made by the appellant in his direct testimony which, if left unexplained, could have been used against him. We reject the appellant's argument on this ground.

In conclusion, we do not believe the overall questioning by these members creates an impression or a substantial doubt that either of them had departed from his required character as an unbiased member of the court for sentencing purposes. *See United States v. Blackenship,* 7 U.S.C.M.A. 328, 22 C.M.R. 118 (1956); *United States v. Carver, supra.* Though their questioning was extended and particular, we believe any reasonable person reading the record would conclude that their minds were not closed against the accused as to the issue of a just punishment.

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

Judge PERRY concurs in the result.