**UNITED STATES**

v.

**Staff Sergeant Christopher E. VIEIRA,
United States Air Force.**

**ACM 35727.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 16 April 2003.

11 Oct. 2006.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Colonel Carlos L. McDade, Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, Major Terry L. McElyea, Major Sandra K. Whittington, Major L. Martin Powell, Major Jennifer K. Martwick, and Major John N. Page III.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, Major C. Taylor Smith, and Major Christine A. Lamont.

Before ORR, Senior Judge, FRANCIS, and SOYBEL, Appellate Military Judges.

## OPINION OF THE COURT

ORR, Senior Judge:

The appellant was tried at Hurlburt Field, Florida, by a military judge sitting as a general court-martial. Contrary to his pleas, the military judge found the appellant guilty of one specification of committing sodomy with a child under the age of 12 years, one specification of taking indecent liberties with a female under the age of 12 years, one specification of committing an indecent act upon a female under the age of 12 years, and one specification of wrongful possession of child pornography in violation of Articles 125 and 134, UCMJ, 10 U.S.C. §§ 925, 934. The military judge sentenced the appellant to a dishonorable discharge, confinement for 17 years, and reduction to E–1. The convening authority approved the sentence as adjudged.

The case is before this Court for review under Article 66, UCMJ, 10 U.S.C. § 866. The appellant initially asserted six errors for our consideration: (1) Whether the military judge erred in not dismissing all charges and specifications with prejudice when she determined that the appellant's right to a speedy trial was violated; (2) Whether the military judge erred as a matter of law when she refused to dismiss Additional Charge I and its Specification and Additional Charge II, Specifications 1 and 2 as being outside the statute of limitations; (3) Whether the evidence for Additional Charge I and its Specifications and Additional Charge II, Specifications 1 and 2 is legally and factually sufficient to demonstrate that the appellant committed any offenses within the applicable statute of limitations; (4) Whether the United States Disciplinary Barracks (USDB) Command Policy # 03–26 has unlawfully modified and increased the severity of the appellant's sentence; (5) Whether the appellant received ineffective assistance of counsel;[1] and (6) Whether the appellant was subjected to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article 55, UCMJ, 10 U.S.C. § 855.[2] In a supplemental filing, the appellant raised an additional error: Whether the record of trial is incomplete because it does not include a verbatim transcript of an Article 39(a), UCMJ, 10 U.S.C. § 839(a) session held on 11 June 2002.[3]

### Background

The appellant was assigned to Little Rock Air Force Base, Arkansas, in December of 1987 as a C–130 aircraft mechanic. In February of 1997, his wife (Mrs. Vieira) went to Salem, New Hampshire, to look after her ailing mother. The appellant agreed to take care of their two daughters, HV, 8 years old, and CV, 5 years old, while his wife was away. Unfortunately, Mrs. Vieira's mother died on 2 March 1997. Shortly after her mother's death, Mrs. Vieira returned to her home on Little Rock Air Force Base, Arkansas. While she was gone, the appellant took both of his daughters to a local video store. He rented a children's video for his daughters and bought an adult pornographic video. After the appellant and his daughters returned home, the appellant asked HV to come into his bedroom and watch the pornographic video with him. During the movie he asked HV

---

1. Raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

2. Raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

3. Raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

whether she would be willing to perform some of the acts portrayed on the video. She agreed and performed oral sex on her father that afternoon and on several occasions thereafter. He performed oral sex on her as well. HV became concerned that they might be doing something wrong because the appellant wrote notes on yellow note pads asking God to help him stop doing what he was doing, and placed them around his bedroom. The sexual abuse stopped at some point between Mrs. Vieira's return home from taking care of her mother, and when the family moved to Hurlburt Field, Florida, in August of 1998.

In January of 2001, HV saw the appellant tickling her sister CV's feet and she got very upset. Her mother asked her why she was so upset, but HV continued to cry. The appellant told his wife that he knew why HV was upset and confessed to committing sodomy with HV while his wife was away taking care of her mother. Mrs. Vieira told HV to keep her mouth shut and promised to make sure her father did not touch her inappropriately again.

HV had a volunteer job working at an animal boarding kennel. On 2 June 2001, HV told JB, the director of the shelter that her father asked her to perform oral sex on him on multiple occasions when they lived in Arkansas. JB called the appellant's wife, Mrs. Vieira and asked her to come over for a visit. JB told Mrs. Vieira about her conversation with HV. Mrs. Vieira got very upset and asked HV, "Why did you tell because we can't take care of ourselves?" Mrs. Vieira told JB she knew about the abuse, that her husband had apologized and she had already taken corrective action. Specifically, she told the appellant to remove all the pornography from his computer and to get rid of his pornographic magazines. She further claimed she no longer left the appellant alone with their girls.

JB told Mrs. Vieira that, in addition to the corrective actions, she still needed to call the sheriff and military authorities. After Mrs. Vieira agreed that the appropriate authorities should be notified of her husband's actions, JB called the Okaloosa County Sheriff's office to report the appellant. A deputy sheriff was dispatched to JB's home, and after talking to both JB and Mrs. Vieira, the deputy called the child abuse hotline. A child abuse investigator from the Florida Department of Children and Families (DCAF) contacted Mrs. Vieira and told her to bring the girls to the DCAF office. Mrs. Vieira brought HV and CV to the DCAF office for an interview. At the DCAF office, a registered nurse with the Child Protection Team conducted a video and audio taped interview with the girls. During the interview, HV told the interviewer that her father showed her a pornographic movie and asked her to perform oral sex on him. Additionally, she said her father touched her vagina and performed oral sex on her. The deputy sheriff and the DCAF investigator observed the interview from behind a two-way mirror.

After the interview, Mrs. Vieira indicated she was scared to take her children home because the appellant was there. As a result, both the deputy and the DCAF investigator went to the Vieira residence to interview the appellant. The DCAF investigator needed to make an assessment of the conditions of the home and to determine whether to remove the children from the home. The deputy escorted her merely for her protection. As they went inside, the appellant said, "I know why you are here." After the deputy told the appellant he was not going to arrest him and the DCAF investigator gave him a pamphlet explaining his rights, the appellant agreed to tell his side of the story. The appellant admitted having oral sex with HV while his wife was away taking care of her sick mother. He then said his daughter started having nightmares, so in January of 2001 he told his wife about the incidents. The interview ended when the appellant began to cry and told them that his career was over. The next day, the appellant called his first sergeant and told her that the police had been to his home and that he was in big trouble because he had his daughter give him sex about three years ago. The following day he told a co-worker that he had done something inappropriate to his daughter while he was in Little Rock during a timeframe when his wife was dealing with some family matters.

On 4 June 2001, two agents from the Air Force Office of Special Investigations (OSI) went to the appellant's home to interview his wife. Mrs. Vieira consented to a search of the home to include their home computer. The OSI agents found child pornography on one of the floppy disks. The hard drives on the computer were password protected, so the agents asked for search authorization because Mrs. Vieira did not know the password. After receiving search authorization, a forensic examiner found approximately 5,000 images of child pornography on the computer's hard drives. He testified that many of the images were deleted from the hard drive on 2 June 2001. He also found files containing graphic stories of father-daughter incest.

### Speedy Trial Issues

In his first assignment of error, the appellant contends that the military judge erred by not dismissing all of the charges and specifications with prejudice, after she determined that the prosecution had violated his right to a speedy trial. We disagree.

On 2 November 2001, two charges and five specifications were preferred against the appellant for sodomy, wrongfully possessing child pornography and indecent acts and liberties with a female under the age of 16, in violation of Articles 125 and 134, UCMJ. Later that same day, the charges and specifications were received by an officer exercising summary court-martial jurisdiction. At his arraignment, the appellant made a motion to dismiss the charges against him based on a violation of his right to speedy trial under Rule for Courts–Martial (R.C.M.) 707 and Article 10, UCMJ, 10 U.S.C. § 810. In making her ruling, the military judge found a total of 94 days excludable, leaving 127 days accountable to the Government. On 11 June 2002, the military judge dismissed the charges and specifications without prejudice for a violation of the appellant's right to a speedy trial under R.C.M. 707.

■ We review a military judge's ruling on whether a case is dismissed with or without prejudice for an abuse of discretion. *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F.2005). "Under an abuse of discretion standard, mere disagreement with the

military judge who applied the R.C.M. 707 factors is not enough to overturn [her] judgment." *Id.* R.C.M. 707(d) in part states:

In determining whether to dismiss charges with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances that lead to dismissal; the impact of a re-prosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial.

■ In the instant case, the military judge considered these factors and dismissed the case without prejudice primarily because she found neither dilatory conduct on the part of the government nor prejudice to the appellant. She also noted that the appellant did not make a demand for a speedy trial until his arraignment. After analyzing the facts and circumstances leading to the dismissal, we find that the military judge's findings were factually correct and supported by the record. Therefore, the military judge did not abuse her discretion by dismissing the case without prejudice.

### Statute of Limitations

■ In his second and third assignments of error, the appellant argues that the offenses described in Additional Charge I and its Specification, and Specifications 1 and 2 of Additional Charge II, even if legally and factually sufficient, occurred outside the five-year period preceding receipt of charges. As a result, he contends that the statute of limitations bars his prosecution for these offenses. We will discuss each argument in turn.

The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we ourselves are con-

vinced of the appellant's guilt beyond a reasonable doubt. *Reed,* 54 M.J. at 41 (citing *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987)).

We review issues involving a statute of limitations de novo. *United States v. McElhaney,* 54 M.J. 120, 125 (C.A.A.F.2000). Article 43, UCMJ, 10 U.S.C. 843, establishes the statute of limitations for offenses under the UCMJ. Article 43(b)(1), UCMJ, provides, in pertinent part, that a person is "not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges." Additionally, Article 43(g)(1), UCMJ, does not bar the prosecution of charges or specifications that are dismissed as defective or insufficient for any cause even if the statute of limitations has expired, as long as the new charges and specifications: 1) are received by an officer exercising summary court-martial jurisdiction within 180 days after the dismissal and; 2) allege the same acts or omissions that were alleged in the dismissed charges or specifications.

The appellant argues that the evidence presented at trial was legally and factually insufficient to sustain the findings of guilty to Additional Charge I and its Specification and to Specifications 1 and 2 of Additional Charge II because, if they occurred, they occurred prior to mid-March 1997. After considering the evidence in the light most favorable to the prosecution, we are convinced beyond a reasonable doubt that the appellant's convictions for committing sodomy, committing an indecent act and taking indecent liberties with his daughter HV, are legally sufficient. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced beyond a reasonable doubt of the appellant's guilt of the litigated offenses.

Arguably, there is some evidence that the appellant may have committed inappropriate sexual activity with his daughter HV until

August of 1998, when the family moved to Florida.[4] Nevertheless, we will assume, without deciding, that all of the appellant's sexual activity with his daughter HV occurred while his wife was away caring for her ailing mother. Based on this assumption, the alleged sexual misconduct with his daughter occurred prior to mid-March of 1997 and would be outside the 5–year period preceding the receipt of the sworn charges on the current charge sheet. However, we conclude that the offenses on the current charge sheet are substantially the same acts that were included in the charges and specifications the military judge dismissed on 11 June 2002, without prejudice, because of a speedy trial violation.

The original charges were received by an officer exercising summary court-martial jurisdiction on 2 November 2001. As a result, all of the misconduct alleged on the original charge sheet occurred within the 5–year period preceding the receipt of the charges. Although the appellant was convicted of charges and specifications preferred on 24 September 2002, we hold that the Additional Charge and its Specification and Specifications 1 and 2 of Additional Charge II were not barred by the statute of limitations because the summary court-martial convening authority received the contested additional charges and specifications within 180 days after dismissal and they allege the same acts that were dismissed, without prejudice, on 11 June 2002.

### Post–Trial Punishment

The appellant next asserts that he suffered illegal post-trial punishment, in violation of the Eighth Amendment and Article 55, UCMJ. He claims, *inter alia,* that he was denied proper medical treatment, missed medical appointments, and suffered substantial pain because of the indifferent attitudes of prison officials assigned to the USDB. We find that even if the facts asserted by appellant are true, he has not met his burden of establishing grounds for relief.

---

4. During her June 2001 interview at FDCF, HV stated that the incidents of touching and oral sex stopped when she was about 9 years old (9 July 1997 would be her 9th birthday) because she realized that it was wrong and began to say

"no." HV also indicated that the incidents occurred while her mother was visiting her sick grandmother during the time frame of February–March of 1997.

■ Whether the conditions alleged constitute cruel and unusual punishment is a question we review de novo. *United States v. Lovett,* 63 M.J. 211, 215 (C.A.A.F.2006) (citing *United States v. White,* 54 M.J. 469, 471 (C.A.A.F.2001)). To support a claim that conditions of confinement amount to cruel and unusual punishment in violation of the Eighth Amendment the appellant must show: (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to the appellant's health and safety; and (3) that he has exhausted the prisoner-grievance system and petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938. *Lovett,* 63 M.J. at 215 (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *United States v. Miller,* 46 M.J. 248, 250 (C.A.A.F.1997)).

■ The appellant's claims are supported by his affidavit submitted to the Commandant of the USDB. Assuming, without deciding, that the appellant's post-trial treatment was as he claims, we find that he has not sustained his burden of showing deliberate indifference to his health and safety. This burden requires that the establishment's officials knew of and disregarded an excessive risk to his health and safety. *Lovett,* 63 M.J. at 215. As our superior court has said, we need not speculate about what prison officials knew of the appellant's treatment, or what conclusions they might have drawn. *Id.* at 216. The burden to make this showing rests upon the appellant, and he has failed to establish that prison officials were deliberately indifferent to conditions that might have violated the Eighth Amendment or Article 55, UCMJ. *See also Miller,* 46 M.J. at 250.

We also find that the appellant did not exhaust his administrative remedies or petition for relief under Article 138, UCMJ. He has, therefore, failed to establish his claim under the Eighth Amendment and Article 55, UCMJ.

### Due Process

■ In light of the appellant's 24 July 2006 request for expedited review, we also considered *sua sponte* whether he was denied due process because of an unreasonable appellate delay. We conclude that he was not. The appellant was sentenced on 16 April 2003, and the convening authority took action on 19 September 2003. The case was docketed at this Court on 23 October 2003. After requesting eight delays, the appellant filed his initial assignment of errors on 15 October 2004. The appellant personally filed a supplemental assignment of error on 26 October 2005.

The test for determining whether appellate delay violates an appellant's due process rights consists of at least four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *United States v. Moreno,* 63 M.J. 129, 135 (C.A.A.F.2006) (citing *United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005); *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F.2004)). "[N]o single factor [is] required to find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136 (citing *Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

After considering these four factors, we determine that post trail delay in this case was lengthy, but not unreasonable, nor did the delay constitute a due process violation. The record of trial consists of 12 volumes and the appellant raised some very complex issues. Additionally, we acknowledge that the majority of the appellate delay occurred after the parties filed the appellate briefs. Given the serious nature of the offenses and the number and complexity of the asserted errors, this Court elected not to rush our decision. Because most of the delay was a result of the exercise of this Court's judicial-making authority and the appellant has not asserted any specific prejudice, we decline to grant any relief. See *United States v. Dearing,* No. 05–0405/NA (C.A.A.F. 18 Sep 2006).

### Remaining Issues

Finally, we considered the appellant's remaining assignments of error and find them to be without merit. *See Smith v. Doe,* 538 U.S. 84, 97, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *Strickland v. Washington,* 466 U.S.

668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Matias,* 25 M.J. 356, 361 (C.M.A.1987).

### Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000).

Accordingly, the approved findings and sentence are

AFFIRMED.