# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40145**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Garret W. SOUDERS**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 9 March 2023

———————————

*Military Judge:* Wesley A. Braun (pretrial proceeding);[1] Charles E. Wiedie, Jr.

*Sentence:* Sentence adjudged on 25 March 2021 by GCM convened at Royal Air Force Mildenhall, United Kingdom. Sentence entered by military judge on 3 May 2021: Dishonorable discharge, confinement for 9 years, and reduction to E-1.

*For Appellant:* Major Stuart J. Anderson, USAF; Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Jay S. Peer, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges*.

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON and Judge CADOTTE joined.

———————————

[1] Judge Braun was detailed to a proceeding to consider an application for a warrant for electronic communications pursuant to Article 30a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 830a.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Senior Judge:

A general court-martial composed of a military judge convicted Appellant of 17 specifications in violation of three articles of the Uniform Code of Military Justice (UCMJ). Contrary to Appellant's pleas, the military judge convicted Appellant of three specifications of possessing and one specification of viewing child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934, *Manual for Courts-Martial, United States* (2012 ed.).[2] The military judge also convicted Appellant, contrary to his pleas, of ten specifications of communicating indecent language and one specification of committing indecent conduct, in violation of Article 134, UCMJ, *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*); and one specification each of indecent visual recording and distributing an indecent visual recording, in violation of Article 120c, UCMJ, 10 U.S.C. § 920c, 2016 *MCM*.[3] Appellant was sentenced to a dishonorable discharge, confinement for nine years, and reduction to the grade of E-1. The convening authority denied Appellant's request for deferment of automatic forfeitures and reduction in grade, but waived automatic forfeitures for the benefit of his spouse and children.

Appellant raises four issues on appeal that we renumber here: (1) whether Appellant's sentence, in particular the adjudged confinement for nine years and dishonorable discharge, is inappropriate; (2) whether the Government improperly withdrew and dismissed five specifications "to excuse its own unreasonable delay in investigating this case," and—after preferral and referral anew—the military judge subsequently erred by denying Appellant's motion to dismiss those specifications[4] for violation of his right to a speedy trial; (3) whether the military judge erred in denying Appellant's motion to suppress allegedly coerced statements he made to special agents of the Air Force Office of Special Investigations (AFOSI), and evidence derived therefrom; and (4)

———————————

[2] Unless otherwise noted, references to the UCMJ and Rules for Courts-Martial (R.C.M.), are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant was found not guilty of one charge and four specifications alleging sexual abuse of a child involving sexual contact in violation of Article 120b, UCMJ, 10 U.S.C. § 920b, 2016 *MCM*, and one charge and one specification of attempted sexual assault of a child in violation of Article 80, UCMJ, 10 U.S.C. § 880, 2016 *MCM*.

[4] The referred specifications at issue are enumerated Specifications 1 through 4, and 15 of Charge I, in the entry of judgment.

whether Appellant received constitutionally ineffective assistance of trial defense counsel because they failed to advise him on the decision of the United States Supreme Court in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), before he elected trial by military judge alone, and prevented him from presenting information about mental health treatment in his unsworn statement.[5] In addition to these issues, we consider whether Appellant was denied the right to timely appellate review.

The court evaluated issues (3) and (4) and finds neither warrants discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We decline to exercise our authority to modify the sentence, and we conclude the military judge did not err in denying Appellant's motion to dismiss for violation of his right to a speedy trial, as claimed. Lastly, we find Appellant has not been prejudiced by delayed appellate review. Finding no error materially prejudicial to a substantial right of Appellant, and concluding that the findings and sentence are correct in law and fact, and should be approved, we affirm the findings and sentence.

## I. BACKGROUND

If there was a defining moment that led to Appellant's court-martial and the 17 convictions under review, it was when his wife learned of her husband's fantasies about the rape, torture, and killing of their four young daughters. Appellant kept those fantasies hidden until the early morning hours on New Year's Day in 2019. After Appellant and his wife celebrated at home with a bottle of champagne, Appellant went upstairs to put their youngest, 14-month-old, daughter back to sleep. Concerned that Appellant was having some anxiety from the way he had been acting recently, his wife checked his phone for clues. She found messages Appellant exchanged on an Internet website using a name and profile she had never seen before. Included in those messages was a picture of their eldest daughter wearing a ballet costume and posing for the camera.

Several messages she read, in Appellant's words, laid bare his "darkest fantasy" of "handing [his] very young daughters over to a group of men to use however they want[ed]." Appellant imagined other men raping his daughters, and when they did, it was "always hard and rough and violent, and sometimes they don't survive." Appellant described how he derived sexual gratification from those and other fantasies: he wrote about how he "enjoy[ed] seeing them naked" and imagined "[i]t would be so hot" to penetrate "a kid that little!" The recipient of those messages, to whom Appellant had earlier disclosed the ages

---

[5] Issue (4) is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

of his eldest daughter and other children, asked Appellant to affirm he wanted to have sexual intercourse with them. Using vulgar language characteristic of these and other communications that were later discovered, Appellant replied in the affirmative, explaining when he "fantasize[d] about f[**]king them [that] it's always being gentle and loving."

After his wife confronted him, Appellant quickly left the house. His wife gathered his phone and two laptop computers, and left with the four children. She drove around trying to decide what to do. In time, she parked at the hospital on Royal Air Force Mildenhall. As her daughters slept, she opened more messages on Appellant's phone and preserved some of what she saw in pictures she took with her phone's camera. Later in the evening, she met with special agents of the AFOSI and gave them Appellant's devices and the pictures she took. Forensic analysis of those devices and other investigative steps uncovered evidence that was admitted at Appellant's court-martial.

The following summarizes that evidence as it bears on the charges and specifications. Our summary reveals Appellant's acts with only such detail as we find necessary to lend factual support to our evaluation of Appellant's claim that his sentence, which included confinement for nine years and a dishonorable discharge, is inappropriate and should not be approved.

## A. Charge I, Violations of Article 134, UCMJ

Appellant was convicted of committing the acts charged in Specifications 1 through 15 of Charge I. Each Specification required proof beyond a reasonable doubt that Appellant committed the charged conduct under circumstances that were of a nature to bring discredit upon the armed forces.

### 1. Child Pornography Convictions, Specifications 1–4

Forensic analysis of Appellant's devices revealed pictures and videos of children engaging in sexual intercourse, sodomy, and bestiality. That analysis also uncovered images depicting lascivious exhibition of the injured genitalia of children, and evidence that Appellant viewed images of children engaging in sexually explicit conduct. Appellant's possession of these materials, and viewing them on divers occasions, was the basis for four child pornography convictions described in Specifications 1 through 4 of Charge I.

### 2. Indecent Language Convictions, Specifications 5–14

Appellant's wife found only a fraction of the messages her husband sent about their minor children. The AFOSI investigation discovered many more. Ten convictions are founded on Appellant's conduct in communicating indecent language to others. As fastidiously detailed in Specifications 5 through 14 of Charge I, evidence showed time and again Appellant indulged others with fantasies he wrote about the sexual abuse of his daughters. In one illustrative

message, he revealed the age of his eldest daughter as "still single digits." He shared how much he "love[d] bath time, and when she changes clothes. [He] love[d] seeing her naked, and it turns [him] on so much. . . . [He] fantasize[d] about sharing her with other men, watching her suck them and jerk them and such." Messages like this one were representative of language Appellant used to describe the gratification he derived from fantasizing about her abuse.

In another communication, Appellant described an activity table his children used for art projects and to play with building blocks. In Appellant's telling, the table "would be perfect to tie a little girl to." Referring to his eldest child, Appellant "imagin[ed] the tears in her eyes" if he penetrated her mouth "as deep into her throat as [he] can." Appellant described "[s]panking her bare [bottom] if she d[id]n't cooperate." Appellant described wanting to watch his eldest daughter losing her virginity as she lay her head in his lap, and wanting to "see [his] girl knocked up so bad" when she matured. In other messages, Appellant wrote about wanting to watch a video of men raping his daughter as they strangle or stab her with a knife in the stomach. Appellant asked the recipient if he would keep raping her "while she slowly bleeds out?"

In other messages that Appellant sent with similar content, he expressed wanting to watch someone rape, torture, and murder his wife and children. At times, Appellant described how he wanted to watch their abuse and killing. Appellant related to a recipient of one message that,

> I want you to break in, tie me up, and make me watch as you abuse, rape, and kill all of them. Even better if you bring a group . . . Would you even do the 1[-]year[-]old? . . . I'm so hard imagining the torture you would put her through . . . I can't wait to see the first time you drive your c[**]k into [Appellant's daughter] . . . She'd scream so hard when that happened, and the blood would pour out of her bruised and swollen c[**]t.

As shown, Appellant's one-year-old daughter was not spared from being an object of his indecent language. Appellant explained to a recipient of one message that "[n]one of [his daughters] are too young," and Appellant would "let [him] have all of them." Appellant continued, revealing his fantasy about what the recipient would do: Appellant imagined "holding the baby down" as the recipient raped her "as she screams, forcing [his] way past any resistance [he] encounter[ed] in her little body."

The fantasies Appellant communicated using indecent language were not limited to his children. Appellant told a recipient of one message how he wanted this person to physically abuse and rape his wife while his daughters watched, "knowing" in their minds "that is going to happen to them." Referring to his eldest daughter, Appellant expressed a desire for the recipient to then

"forcefully take her virginity."

### 3. Indecent Conduct Conviction, Specification 15

Evidence at trial showed Appellant sometimes included family pictures of his daughters in messages he sent that communicated indecent language about them. In those messages, Appellant verbalized what he portrayed as thoughts and desires of their sexual abuse. Appellant's transmission of pictures while describing that abuse was the basis for his conviction for engaging in indecent conduct, on divers occasions, as detailed in Specification 15 of Charge I.

Appellant prefaced a group of messages he sent with the proviso that "[he] love[d his] daughters, so this is only fantasy that [he]'d never act on." Appellant proceeded to describe to the recipient how he "would love to watch you enjoying yourself with my girl," and sent a picture of his eldest daughter on a trampoline. A moment later, the recipient replied "she has cute little legs and butt." Appellant remarked that he would "let you do whatever you want, as long as [he] can watch."

In a second group of messages, Appellant sent a picture of his eldest daughter wearing a dance outfit. Appellant told the recipient he would "tell her to just take her top off" and "to do whatever you tell her to." The recipient asked Appellant to take her picture with her clothes off, to which Appellant replied he "can[']t get any sexy pics for a couple weeks" because Appellant was traveling for work and away from home. Later in the same conversation Appellant said he would "love for you to see her naked body and little p[***]y," and asked, "[W]ould you try to f[**]k a girl that small?" When the recipient responded that he was "sure it is going to be sweet tasting," Appellant replied, "I'm sure it will taste delightful! I'll get you a pic when I can."

In a third group of messages, Appellant included a picture of his eldest daughter wearing a fairy costume and showing her midriff. Appellant explained his "wife sent [him] this photo." He related how he "was instantly turned on by the crop-top showing her tummy." In the same conversation with the recipient of these messages, Appellant related how he "love[d] the idea of you seeing her naked body" and would "love to let you use her however you wanted." Appellant expressed he would "love to see your c[*]m on that tummy . . . [o]r dribbling down her chin out of her mouth."

## B. Charge II, Violations of Article 120c, UCMJ.

Appellant was convicted of one specification each of indecent visual recording and distributing an indecent visual recording. The evidence supporting both convictions pertains to the effort Appellant made to prepare and send lascivious communications over the Internet.

The conduct at issue followed a conversation about the rape and torture of

Appellant's eldest daughter. As relevant to this appeal, the exchange began with the person asking Appellant, "Let me see my victim." In response, Appellant sent a picture of his eldest daughter wearing a ballet dress. Her facial features are plainly discernable. The recipient manifested liking the picture and asked Appellant if he had "[a]ny more [pictures] of her that show a bit more skin." Appellant replied in the negative, but offered he would "try to take some after [his] wife goes to sleep," adding that "[his] daughter usually sleeps in just panties."

In time, the person inquired if Appellant's wife was asleep and if he had "done anything with any of them?" Appellant replied he was in the room with his daughter. Appellant wrote, "I'm trying to not wake her up. I've never done anything with them before. Just fantasized." A short time later, Appellant sent a picture of a young girl lying in bed. The picture shows a young child's body turned away from the camera, underwear pulled down, exposing the child's buttocks. At trial, Appellant's wife testified she recognized the child as her eldest daughter. Forensic analysis of Appellant's phone showed Appellant accessed the camera application a few minutes into the conversation with the recipient of the messages. The recipient replied, "Nice. An ass [l]ike hers just begs to be violated." Appellant responded, "I want to see her scream as you shove your c[**]k in her ass. Then she'd shut up as you pull a rope tight around her throat."

Appellant's conduct in taking and sending the picture was the basis for two convictions detailed in Specifications 1 and 2 of Charge II.

## II. DISCUSSION

### A. Sentence Review

Often in our opinions, we resolve an appellant's challenges to the findings of guilty before determining if the sentence, as entered, may be inappropriate. In the instant case, we take a different approach. Having summarized the evidence supporting Appellant's convictions, we find it suitable to begin our review with Appellant's claim that his sentence is inappropriate under the standard applicable to that claim. Our review necessarily relies on evidence supporting the convictions in addition to other considerations.

In the analysis that follows, we consider the military judge's determination of the maximum punishment, the evidence relevant to Appellant's claim, the adjudged sentence, and the legal standard of review. We conclude that the sentence is not inappropriate.

### 1. Additional Background

#### *a. Maximum Punishment Determination*

Before findings were announced, the military judge ruled on a defense motion that urged the military judge to find the 15 specifications under Charge I were an unreasonable multiplication of charges. After the close of evidence, the miliary judge ruled on the motion.

As to Specifications 1 through 4, the military judge found if Appellant were convicted of more than one of the four child pornography offenses in those Specifications then they would constitute an unreasonable multiplication of charges; the military judge ruled any confinement that might be imposed for those convictions would run concurrently within that group of offenses. Because Appellant was convicted of all four specifications, the military judge determined the maximum confinement for those four specifications was ten years as a result of concurrent sentencing.

For the remaining specifications under Charge I, the military judge stated "*[t]o the extent* there [was] an unreasonable multiplication of charges," if convicted "the court will impose concurrent sentences to confinement as a remedy"—that is concurrent among Specifications 5 through 15 (emphasis added).[6] Because Appellant was convicted of ten indecent language offenses (Specifications 5 through 14), and of indecent conduct (Specification 15), the maximum confinement for those 11 offenses was the five-year maximum that could be imposed for the indecent conduct conviction.

In response to Appellant's claim that the sentence is inappropriate, the Government does not challenge the military judge's ruling. As a result, we need not decide whether the court can evaluate that ruling for error as it bears on Appellant's challenge to the sentence. Based on that ruling, the maximum confinement Appellant faced for the 15 findings of guilty under Charge I was 10 years for Specifications 1 through 4, and 5 years for Specifications 5 through 15, or 15 years in total. Altogether, the military judge determined Appellant faced a maximum punishment of 15 years' confinement for Charge I and 12

---

[6] The military judge assumed without deciding that Specifications 5 through 14 were an unreasonable multiplication of charges. In the analysis that follows, we refer to that assumption as a ruling. Without objection, the military judge announced concurrent terms for these ten offenses before announcement of findings and the sentencing proceedings that follow a finding of guilty. Appellant claims no prejudice from this ruling and we find no prejudice to Appellant.

years' confinement for Charge II,[7] for a combined 27 years' confinement. That was in addition to a sentence that could include, *inter alia*, a dishonorable discharge, reduction to the grade of E-1, and forfeitures of all pay and allowances.

### b. Evidence

Evidence showed Appellant sent 28 pictures of his children in 17 different conversations relating to their abuse. Appellant also shared close-up pictures of his wife in an intimate setting. Her face is well lit and features discernable.[8] Although the pictures do not reveal her private areas, in some pictures she appears to be nude or partially nude, and in others she is wearing lingerie. Appellant identified the woman in those pictures as his wife in the messages he sent to others.

In sentencing, Appellant's wife testified about the immediate and direct impact of Appellant's conduct on her children. Over defense objection, she also testified about the impact on her. The military judge ruled her testimony was a proper matter in aggravation. She described how after the discovery of Appellant's messages she was preoccupied with feelings of "sheer terror and how to safely get [her]self and the girls away" from Appellant. In her telling, she

> had just read conversations where [her] husband was discussing possibly having people violently rape and murder [her] children and [her]self. [She] didn't know who [she] was dealing with. He had taken off, but [she] was afraid that he would come back and kill [her and her children]. [She] didn't want to be in the house when he finally returned.

Appellant's wife described "nightmares about people breaking into the house," and "about somebody coming and snatching the children." She testified about the impact on her children of being abruptly separated from their father and how she struggled to tell them why they could not see their father anymore. She described difficulty determining an appropriate age for telling her children what their father had done.

In an unsworn statement, Appellant's wife explained how her daughters essentially had "lost their dad," but they remained unaware of what he had

---

[7] The maximum sentence to confinement for the indecent visual recording (Specification 1) and distributing an indecent visual recording (Specification 2) offenses under Charge II was five and seven years, respectively.

[8] As far as this court's findings regarding pictures of Appellant's wife and other findings of fact as they bear on victim impact, we note that "[u]nlike most intermediate appellate courts and [the United States Court of Appeals for the Armed Forces], [a Service] Court of Criminal Appeals has factfinding powers." *United States v. Cendejas*, 62 M.J. 334, 342 (C.A.A.F. 2006) (citing Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000)).

done: "They know something is very wrong, but not what. They have felt loss and grief as if he died. The girls have mourned the loss of the father they thought they knew." In that same statement she described the fear she felt of being discovered by strangers. She explained,

> Because [Appellant] shared images of [her] during some of those same conversations with individuals who discussed raping and murdering [her] and the girls, [she] live[s] in fear [they] will be found. When someone watches the girls while [they] are in public, [she] no longer assume[s] they are just amused or impressed by their good behavior. [She] ha[s] to have a healthy awareness that a person watching could be someone who has seen [their] faces because of [Appellant]'s actions. [She] ha[s] learned there are monsters, even amongst those who you think you know best. The people [Appellant] had those conversations with could exist from a small town to a big city half way around the world. [They] will never truly be free and safe from the choices [Appellant] made.

Appellant's sentencing case included pictures, and coins and ribbons he received. In an unsworn statement, Appellant explained his family life as a youth and details of his 15 years' service in the Air Force, including that he garnered recognition as a distinguished graduate from the Network Intelligence Analyst Apprentice Course. Appellant apologized to his wife and children.

### c. Sentencing

When announcing sentence, the military judge ordered the confinement imposed for all 15 convictions under Charge I to run concurrently. Contrary to trial counsel's recommendation in sentencing argument, the concurrent sentence included the confinement meted out as punishment for the four child pornography convictions:[9] the military judge sentenced Appellant to two years' confinement for each of Specifications 1 through 4 of Charge I, six months' confinement for each of Specifications 5 through 14 of Charge I, and four years' confinement for Specification 15 of Charge I. All told, Appellant received a four-year sentence to confinement for the 15 convictions under Charge I.

---

[9] Trial counsel argued, unsuccessfully, "[t]here's no basis in law or fact for the child pornography specifications to run concurrently with [Appellant's] indecent communications and indecent conduct," asserting the former "need to run consecutively" with the latter. The Defense implored the military judge to "look at the principles of sentencing to determine whether the[ ] [specifications] should run concurrently or consecutively." The Defense argued the "deterrent effect that [the investigation] already has taken on [Appellant] these past 27 months."

The military judge sentenced Appellant to two years' confinement for Specification 1 of Charge II, and five years' confinement for Specification 2 of Charge II. When announcing sentence, the miliary judge ordered the confinement imposed for both convictions to run concurrently. Accordingly, Appellant received a five-year sentence to confinement for the two convictions under Charge II.

When announcing sentence, the military judge ordered the four years' confinement for the 15 Charge I convictions to be served consecutively with the five years' confinement for the Charge II convictions, resulting in nine years' total confinement. As noted earlier, the military judge also imposed a dishonorable discharge and reduction to the grade of E-1. Appellant challenges this sentence as inappropriate on appeal.

**2. Law**

A Court of Criminal Appeals (CCA) may affirm "only . . . the sentence or such part or amount of the sentence" as it "finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). The distinction the court applies in exercising this responsibility is at least as old as the UCMJ. *See*, *e.g.*, *United States v. Findley*, 1 C.M.R. 731, 733 (A.F.B.R. 1951) (evaluating whether "a sentence is legally permissible . . . is aside from and not to be confused with the appropriateness of the sentence").

A CCA reviews de novo the question of the propriety of all or part of a sentence. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citation omitted). We consider "the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)); *see also United States v. Williams*, 35 M.J. 812, 819 (A.F.C.M.R. 1992) (stating "we have no difficulty concluding that the sentence is *not inappropriate*" (emphasis added)). Although we are empowered to "do justice" in reference to a legal standard, we have no discretion to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

In *Sauk*, we maintained the custom at least since the *Findley* opinion of referring to the sentence that should be approved under Article 66, UCMJ, 10 U.S.C. § 866, as an "appropriateness" review. 74 M.J. at 606; *see*, *e.g.*, *Anderson*, 67 M.J. at 705. Recent cases continue this practice. *See*, *e.g.*, *United States v. Knarr*, 80 M.J. 522, 538 (A.F. Ct. Crim. App. 2020); *United States v. Hamilton*, 77 M.J. 579, 587 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019). While the term is established, it is a misnomer in that finding

a sentence "appropriate" is not to say a more severe punishment would have been inappropriate if adjudged. As noted by the predecessor to this court, sentence appropriateness authority may be exercised downward, but never upward. *United States v. Daniels*, 3 M.J. 982, 985 (A.F.C.M.R. 1977) (noting the "responsibility to determine an appropriate sentence" includes "the authority to change the form of penalty so long as the severity of the sentence is not increased" (citations omitted)). Put simply, our finding a sentence appropriate manifests a de novo determination that the sentence should be approved on the basis of the standard articulated in these and other cases that interpret our Article 66, UCMJ, responsibility.

**3. Analysis**

Appellant argues his sentence, which includes nine years' confinement and a dishonorable discharge, is inappropriate and should not be affirmed. The focus of two contentions in his assignment of error is the length of two segmented sentences to confinement. We examine both contentions, and a third that urges the court to set aside the dishonorable discharge. In the analysis that follows we conclude Appellant's sentence is not inappropriate.

### a. Four Years' Confinement for Specification 15 of Charge I

Appellant first contends that the portion of his sentence that includes four years' confinement for Specification 15 of Charge I is inappropriate in relation to the two years' confinement imposed for the ten convictions for communicating indecent language in Specifications 5 through 14 of that charge. Appellant argues it is unjust he received an additional two years' confinement for his indecent conduct in transmitting what amount to ordinary, family pictures of his minor daughters even though they accompanied messages that contained indecent language about their rape, torture, and killing. Appellant complains the military judge doubled his punishment despite the fact that the pictures he sent were not indecent, their transmission "was only contextually criminal," and that Specifications 5 through 14, which capture "the more serious conduct," "served as that context."

Before proceeding with an analysis of these contentions, two points require mention. First, to the extent that an appellant challenges the weight given to considerations that might have shaped any part of the sentence, our determination of the sentence that should be approved is de novo, *Lane*, 64 M.J. at 2, not deferential. The second point is related to the first: we are unaware of any authority that would require this court to use a segmented term of confinement identified by an appellant as a benchmark to evaluate "the sentence or such part or amount of the sentence" that "should be approved" under Article 66, UCMJ. Even when this court has compared sentences between appellants, we have been mindful that sentence comparison is only one aspect of our Article

66, UCMJ, review. *Anderson*, 67 M.J. at 707–08 (A.F. Ct. Crim. App. 2009); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (observing, "However proper it may be for . . . the Courts of Military Review to consider sentence comparison as an aspect of sentence appropriateness, it is only one of many aspects of that consideration").

Turning to the sentence under review, we are not persuaded, even in context, that four years' confinement is inappropriate for the acts of transmitting the pictures at issue while Appellant was engaged in conversations that included indecent language about his children. In a relevant portion of the Government's findings argument, trial counsel explained that Appellant's conduct in sending the pictures operated to "further encourage" recipients of his messages to "revel in the sexual exploitation, sexual abuse[,] and even rape and murder of his children."[10]

This sentiment is amply supported by the evidence. Although pictures Appellant sent to others were not indecent on their own, they made his family easily recognizable to strangers who, as trial counsel argued, reveled in Appellant's fantasies of their sexual exploitation, torture, and murder. The legal guardian of those children—Appellant's wife—feared those pictures would make it feasible, if not desirable, for them to be harmed by someone who recognized their faces. Appellant's contextual criminality argument is further diminished by the fact that the military judge ordered the confinement imposed for *all* Charge I convictions to run concurrently—including the four child pornography convictions. Put simply, there is no better indication that context factored into the sentence that was adjudged than the sentence itself.

For these reasons we are unconvinced Appellant's sentence is inappropriate on the basis that his culpability "doubled when he included these pictures," as urged by Appellant on appeal. Appellant's conduct in sending pictures of his children merited punishment. We are satisfied the confinement adjudged for Specification 15 of Charge I—and running concurrently with the other 14 convictions under Charge I, including Specifications 5 through 14—is not inappropriate.

### b. Five Years' Confinement for Specification 2 of Charge II

Appellant also urges the court to find his sentence to five years' confinement for Specification 2 of Charge II is inappropriate. Appellant explains his

---

[10] In argument, trial counsel is permitted to refer to the need for the sentence to: "(A) reflect the seriousness of the offense; (B) promote respect for the law; (C) provide just punishment for the offense; (D) promote adequate deterrence of misconduct; (E) protect others from further crimes by the accused; [and] (F) rehabilitate the accused . . . ." R.C.M. 1002(f)(3); *see also* R.C.M. 1001(h).

conduct—distributing a recording of the private area of his eldest daughter—occurred in a short time and during a "single course of events." Appellant further explains this conduct was discovered by AFOSI agents, not by his wife, and thus it did not contribute to the victim impact she described upon discovering Appellant communicated indecent language about their children.

We are not persuaded by these arguments. Before sending the picture at issue, Appellant first sent a picture of their eldest daughter in which her face is plainly discernable. The picture Appellant was convicted of distributing depicts the exposed buttocks of her sleeping. Appellant took this picture and then sent it at the request of a recipient of his messages. Appellant's wife was unaware of the conduct underlying this conviction when she left the residence with their children, but the offense is aggravating in a different way. Appellant sent the picture at the behest of someone with whom he reveled in indecent communications about his daughter's sexual exploitation and torture.

Appellant argues he "was never convicted of acting on these fantasies." But, in one significant way, he was and he did. To be sure, the evidence did not show Appellant engaged in sexual or physical abuse of his children in line with the indecent language he communicated, but he acted nonetheless by responding to the bidding of a stranger who asked to see his "victim." Appellant's indecent conduct in sending the picture validated his wife's concern that her daughters' wellbeing could not be assured when they are alone with their father or around "someone who has seen [their] faces because of [Appellant]'s actions," as she explained in her unsworn statement. Five years' confinement for this specification is not inappropriate either by itself, or—as found by the military judge—when served concurrently with the two years' confinement adjudged for Appellant taking the picture as convicted in Specification 1 of Charge II.

### c. Dishonorable Discharge

Appellant urges the court to find that his conduct, taken together, does not warrant a dishonorable discharge. In support of this contention, Appellant relies on points he makes in his other contentions and argues the logic of what his case is not. Appellant argues he "has not been convicted of the actual or attempted realization" of his fantasies. His conduct "did not involve the creation of any illicit or improper images." He argues the impact to his wife was the shock of the fantasies themselves and not his acting on them.

We are not persuaded sentence relief is warranted on this claimed basis. Appellant is correct that he could have attempted to act, or acted, on his fantasies of rape, torture, and killing of those closest to him by following through with those fantasies. That no evidence showed he did any of these things, however, is insufficient to find inappropriate a sentence that includes a dishonorable discharge. The attempt to distinguish between what Appellant did and

did not do is a strawman that deflects from actual consequences of Appellant's acts. Evidence that Appellant's family was not physically harmed belies convincing evidence of psychological harm—mental and emotional—that was a predictable result of many of the acts underlying his convictions. Victim impact is among the considerations in our sentence review. *See United States v. Proctor*, 34 M.J. 549, 559 (A.F.C.M.R. 1992) (evaluating "the impact upon the many victims" among other considerations); *see also* R.C.M. 1002(f)(2)(A) (recognizing "impact of the offense on . . . [the] psychological well-being of *any* victim" as a consideration (emphasis added)). Those acts and their natural consequence warrant a dishonorable discharge and we find it is not an inappropriate penalty.

### d. Conclusion

In our sentence review, we have evaluated, moreover, the assertion on appeal that the sentence "reflects the military judge's emotional reaction," specifically "to the ideas [Appellant] communicated, and not an impartial, detached assessment of the true severity of the acts themselves." Appellant argues the sentence was not a "reasoned assessment of the true severity of the offenses." We find the sentencing authority was neither biased nor irrational in sentencing Appellant. The military judge's announcement of concurrent segmented sentences for the four child pornography offenses is but one reason why we reject such claims. Appellant argues, also, that the "dishonorable discharge is *unduly severe* and *not supported by the evidence.*" (Emphasis added). For the reasons given, we find no basis for the claim that the dishonorable discharge is incorrect in law because it is unduly severe, or incorrect in fact on the claimed basis that it is unsupported by evidence.

In conducting our sentence review, we note that "[s]entence appropriateness involves the judicial function of assuring that justice is done" and that an appellant "gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). The court considered the particular circumstances of Appellant's case, including his convictions for possessing and viewing child pornography, communicating indecent language, committing indecent conduct, indecent visual recording, and distributing an indecent visual recording. We have considered the extenuation and mitigation evidence along with the impact of Appellant's conduct on his family.

We have given individualized consideration to Appellant, the nature and seriousness of the convictions, Appellant's record of service, and all other matters contained in the record. For the aforementioned reasons, we find the sentence is correct in law and fact, not inappropriate, and should be approved.

**B. Speedy Trial**

Before trial, Appellant filed a motion to dismiss, with prejudice, Specifications 1 through 4, and 15 of Charge I. In that motion Appellant alleged the Government violated his speedy trial rights under Rule for Courts-Martial (R.C.M.) 707 and the Sixth Amendment[11] to the United States Constitution. Appellant asserted his right to a speedy trial in that motion. Appellant objected that the five specifications as originally preferred and referred were improperly withdrawn and dismissed before each was preferred and referred anew.

The military judge held an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to decide Appellant's motion. The military judge denied the motion, ruling that Appellant was not denied the right to a speedy trial. Appellant challenges that ruling on appeal.

**1. Additional Background**

The original charge and specifications were preferred on 14 January 2020, and referred to trial by general court-martial on 7 April 2020. After preferral, AFOSI agents obtained search warrants for evidence of electronically stored communications from two Internet websites. In March and April 2020, AFOSI agents received evidence responsive to those warrants. That evidence revealed possible additional misconduct by Appellant that was not embraced within the charge and specifications.

Based on the newly discovered evidence, on 28 April 2020, the special court-martial convening authority (SPCMCA) requested the general court-martial convening authority (GCMCA) withdraw and dismiss the charge and the specifications. On 7 May 2020, the staff judge advocate (SJA) for the GCMCA agreed with the SPCMCA. The SJA stated that consolidating new charges with the existing specifications was "impossible" to complete with only five days remaining on the 120-day speedy trial clock. The SJA explained that the last day Appellant could be arraigned before the clock expired was 13 May 2020, which was insufficient time to prefer additional charges, complete a preliminary hearing, and accomplish referral. The SJA advised against proceeding to trial on the existing specifications, then convening a second court-martial to try Appellant for UCMJ violations based on the newly discovered evidence.

On 8 May 2020, the GCMCA followed the SJA's advice and withdrew and dismissed the original charge and specifications without prejudice. He stated,

> I take this action due to discovery of new evidence that indicates additional misconduct by [Appellant]. In anticipation this new evidence will cause [Appellant] to become the subject of newly

---

[11] U.S. CONST. amend. VI.

preferred charges, which would warrant referral to a court-mar-
tial, I desire that [Appellant] be tried on all charged offenses at
a single trial to best serve the interests of justice and promote
judicial economy.

On 12 May 2020, Appellant's squadron commander preferred the charges
and specifications that were referred on 5 August 2020. These are the charges
and specifications under review. Specifications 1 through 4 of Charge I are sub-
stantially the same as the specifications that were initially referred, and sub-
sequently withdrawn and dismissed by the GCMCA.[12] Specification 15 of
Charge I differs somewhat from the original specification: the more significant
changes included a different and expanded charging window, and the charged
act of transmitting a digital image of a minor was alleged on divers occasions.[13]

**2. Ruling**

As found by the military judge, AFOSI agents reviewed the information
they received in March and April 2020 that was responsive to search warrants
for two Internet websites. Evidence they received in March 2020 revealed that
Appellant "engaged in . . . conversations about sexual abuse of [his] children
with more than ten different user accounts." That information "included evi-
dence of previously unknown instances" when Appellant "allegedly sent pic-
tures of his children while discussing the sexual abuse of his children." As fur-
ther found by the military judge, AFOSI agents received information in April
2020 that Appellant "engaged in a conversation about sexual abuse of his chil-
dren, [and] sent a picture of his youngest child lying in bed."

Examining this additional evidence and the investigative steps the AFOSI
agents took in the context of the entire case, the military judge found the
GCMCA "acted within his discretion to withdraw and dismiss the original
charge" and the underlying specifications. On this point, the military judge
made four essential findings. First, that "[t]he Government has an obligation
and the right to thoroughly investigative a case before proceeding to trial." Sec-
ond, the "case involve[d] a great deal of digital evidence, extensive investiga-
tion and numerous searches pursuant to Article 30a[, UCMJ,] proceedings."

---

[12] Specifications 1–4 of Charge I added "United States Air Force" to the statement of
personal jurisdiction.

[13] Specification 15 of Charge I added "United States Air Force" to the statement of
personal jurisdiction; it expanded the location of the offense from the "United King-
dom" to the "continent of Europe;" it changed the charged timeframe from between "on
or about 1 October 2018 and on or about 25 January 2019" to "on or about 19 June
2018 and on or about 31 December 2018;" it added the word, "wrongfully;" it changed
the charged act from "transmitting via communication technology a digital image" to
"transmit a digital image;" and it substituted "a minor" for the victim's name.

Third, "[t]he searches in this case produced additional evidence that justified additional charges and specifications." And fourth, the military judge found the convening authority's intent for Appellant to be tried on all charged offenses at a single trial, so as "to best serve the interests of justice and promote judicial economy," was in harmony with the intent of R.C.M. 601(e)(2).

The military judge found dismissal of the original charge and its specifications was not "a subterfuge to avoid the R.C.M. 707 speedy trial clock," as claimed. He found that assertion was "not supported by the evidence or any reasonable inference."[14] He concluded that referral took place "well before the 120-day mark," as did the SPCMCA's timely recommendation to withdraw the original specifications. The military judge found this was "not a case where the Government was about to violate the R.C.M. [707] speedy trial clock and [then] took a drastic action to 'restart' the clock." The military judge explained he would reach the same conclusion even if he assumed that the SPCMCA erred in excluding 60 days from speedy trial consideration.[15]

The miliary judge considered and rejected Appellant's contention that the Government could have arraigned Appellant on the original charge and specifications before the convening authority withdrew and dismissed the charge. The military judge found "that would only have served to delay the proceedings further" and "[s]uch a delay is inapposite to the principle [sic] reason for the R.C.M. 707 speedy trial clock, which is to prevent an accused presently under court-martial charges from unreasonable delays." The military judge similarly rejected the argument that the new charges should simply have been joined to the old. On this point the military judge concluded that "[t]he Government is not required to arraign an accused simply to permit him to object to joinder of new offenses and then take action to withdraw and dismiss the charges and specifications and start over."

Lastly, the military judge found no violation of Appellant's Sixth Amendment right to a speedy trial. Applying the factors in *Barker v. Wingo*, 407 U.S. 514 (1972), he found the length of the delay was not unreasonable because of the complexity of the AFOSI investigation. He found that the desire to try all charges together weighed against finding a speedy trial violation. Appellant's demand for a speedy trial weighed in his favor, but the military judge found he was not prejudiced by the delay. In that regard, the military judge found "there [wa]s no evidence that the amount or level of anxiety suffered by [Appellant] . . . is distinguishable from normal anxiety experience[d] by an accused

---

[14] The military judge similarly found "[t]here is no evidence that the Government feared a violation of R.C.M. 707" and then "took action to circumvent that right."

[15] The SPCMCA excluded the time between 27 March 2020 and 25 May 2020, over defense objection, due to the COVID-19 pandemic.

facing court[ ]-martial." The military judge further found "no evidence that witnesses' memories have faded [or] evidence has been lost."

### 3. Law and Analysis

On appeal, Appellant renews the contention in his motion that the convening authority's withdrawal and dismissal "was only a subterfuge to violate [his] speedy trial rights." Appellant claims the Government withdrew the five specifications to excuse unreasonable delay in investigating the case, and "to interfere with [Appellant]'s right to a speedy trial under the Sixth Amendment and R.C.M. 707." In his reply brief, Appellant maintains "[t]here is no question of a 'real' purpose hidden behind a 'subterfuge' purpose" of judicial economy and efficiency to try all known charges together. According to Appellant, because the withdrawal and dismissal were accomplished for an improper reason, the speedy trial clock on these specifications should not have been restarted: it ran from the date of preferral, 14 January 2020, to arraignment on 28 October 2020, or 228 days. According to Appellant, the specifications at issue should be dismissed with prejudice under the Sixth Amendment because of his impaired ability to mount a defense as the memories of witnesses deteriorated from January 2019 to March 2021, and the anxiety he experienced during the delayed prosecution of his case.

We review de novo the question whether an appellant received a speedy trial. *United States v. Heppermann*, 82 M.J. 794, 803 (A.F. Ct. Crim. App. 2022). In doing so, "[w]e give substantial deference to findings of fact made by the military judge and will not overturn such findings unless they are clearly erroneous." *United States v. Fujiwara*, 64 M.J. 695, 697 (A.F. Ct. Crim. App. 2007) (citations omitted). "Under an abuse of discretion standard, mere disagreement with the conclusion of the military judge who applied the R.C.M 707 factors is not enough to overturn his judgment." *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F. 2005); *see also United States v. Vieira*, 64 M.J. 524, 527 (A.F. Ct. Crim. App. 2006). If a military judge's factfinding is not clearly erroneous, his ruling "should be affirmed unless . . . his decision in applying the R.C.M. 707 factors was influenced by an incorrect view of the law." *Dooley*, 61 M.J. at 263 (footnote omitted).

Servicemembers tried by courts-martial have a right to a speedy trial. Military law identifies several sources for this right, including R.C.M. 707(a)–(b), which requires that a person be arraigned within 120 days of preferral of charges. After charges are initiated but before findings are announced, the convening authority "may for any reason cause any charges or specifications to be withdrawn." R.C.M. 604(a). "Charges that have been withdrawn . . . may be referred to another court-martial unless the withdrawal was for an improper reason." R.C.M. 604(b). When the accused is not under pretrial restraint at the time charges are dismissed, a new 120-day period begins "the date on which

charges are preferred anew." R.C.M. 707(b)(3)(A)(ii)(I). However, if charges were dismissed for an "improper purpose or for subterfuge," the 120-day clock runs from the date of the original preferral; that is to say, the original clock "shall continue to run." R.C.M. 707(b)(3)(A)(iii).

A proper reason for withdrawal is "a legitimate command reason which does not 'unfairly' prejudice an accused." *United States v. Underwood*, 50 M.J. 271, 276 (C.A.A.F. 1999) (citations omitted). Withdrawing charges in the interest of "judicial economy by trying all known charges in a single trial" has been upheld as a proper purpose. *United States v. Koke*, 34 M.J. 313, 315 (C.M.A. 1992). Withdrawing charges after the discovery of new evidence in order to try all known offenses at a single trial has been found to be proper. *United States v. Leahr*, 73 M.J. 364, 370 (C.A.A.F. 2014). "This reasoning aligns with the proper reason of promoting judicial economy and referring all known charges to a single court-martial." *Id.* (first citing *Koke*, 34 M.J. at 315; and then citing R.C.M. 601, Discussion, 2016 *MCM*).

Looking to the specifics of this case, we find the military judge's findings of fact are not clearly erroneous, and his conclusions of law were correct. The military judge did not abuse his discretion in finding the convening authority's purpose for withdrawing the charge and specifications at issue was not improper and Appellant suffered no prejudice. We reach the same conclusions in our evaluation of the military judge's application of the four factors set forth in *Barker*, 407 U.S. at 530: (1) the length of the delay; (2) the reasons for the delay; (3) an appellant's assertion of his right to a timely review, if any; and (4) prejudice to the appellant. Analysis of the *Barker* factors demonstrates the military judge did not abuse his discretion in finding Appellant was not denied the right to a speedy trial under the Sixth Amendment.

## C. Delayed Appellate Review

Appellant's case was docketed with the court on 11 August 2021, more than 18 months before a decision was rendered. In *United States v. Moreno*, our superior court established a presumption of facially unreasonable delay when a service CCA does not issue a decision within 18 months of docketing. 63 M.J. 129, 142 (C.A.A.F. 2006).

Because there is facially unreasonable delay, we examine the four factors set forth in *Barker*, 407 U.S. at 530, *supra*. *Moreno*, 63 M.J. at 135 (first citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); and then citing *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not been prejudiced by the delay, there is no due process violation unless the delay is so egregious as to "adversely

affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As to the first factor—the length of the delay—the appellate review of Appellant's case has exceeded the *Moreno* standard of 18 months by less than one month. Accordingly, this factor weighs in Appellant's favor, but only slightly. As to the second factor—the reasons for the delay—Appellant filed his assignments of error on 7 July 2022, almost eleven months after his case was docketed with this court, and after securing eight enlargements of time. The court granted an enlargement of time for the Government to obtain declarations from trial defense counsel responsive to Appellant's assertions of ineffective assistance of counsel. The court granted a second enlargement of time, of seven days, for the Government to file its answer on 4 October 2022, at which point the case was joined. Appellant replied to the Government's answer on 19 October 2022.

The pleadings in this case indicate to us that Appellant's appellate defense counsel thoroughly and effectively reviewed the trial proceedings before asserting assignments of error and issues on Appellant's behalf. Likewise, the Government reasonably required more time to fully analyze and effectively respond to Appellant's brief. Under these circumstances, we find the reasons for delay weigh against a finding of a due process violation. As to the third factor, Appellant has not asserted his right to timely appellate review. Accordingly, this factor weighs against Appellant.

Turning to the fourth factor—prejudice—we note *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of grounds for appeal and ability to present a defense at a rehearing. 63 M.J. at 138–39 (citation omitted). Where, as here, an appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139 (citation omitted). Similarly, where an appellant's substantive appeal against his conviction fails, his ability to present a defense at a rehearing is not impaired. *See id.* at 140–41. Furthermore, we do not discern any "particularized anxiety or concern that is distinguishable from the normal anxiety experienced" by an appellant awaiting an appellate decision. *See id.* at 140. Accordingly, this factor weighs against Appellant. *See Toohey*, 63 M.J. at 361. Considering all the factors together we do not find a violation of Appellant's due process right owing to delayed appellate review.

In the absence of a due process violation, a CCA has authority under Article 66, UCMJ, "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), [UCMJ, 10 U.S.C. §859(a),] if it deems relief appropriate under the circumstances." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted). To determine if

*Tardif* relief is warranted, we consider the factors announced in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). Those factors include how long the delay exceeded standards, the reasons for the delay, whether the Government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, whether relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide meaningful relief. *Id.* Applying these factors, the court finds appellate delay justified and relief is not warranted.

## III. Conclusion

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to a substantial right of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court